UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
………………………………………………··X

|  |  |  |
|---|---|---|
| AHMED HEGAZY. SHRIEF SROR, RAMIZ SHEHATTA, WALID SOLTAN, AHMED ABOUELKHAIR, and AHMED MONEIM on behalf of themselves and all others similarly situated, | : : : : : : | **Index No.** |
|  | : |  |
| Plaintiffs, | : | **COMPLAINT** |
| v. | : : |  |
| THE HALAL GUYS, INC., ALL 53 SW INC., NIGHT 53 SE INC., THE HALAL GUYS FRANCHISE INC., ALTAWHID FOOD SUPPLY INC., AHMED ELSAKA, ABDELBASET ELSAYED, MOHAMED ABOUELENEIN a/k/a MOHAMMED ABOUELENEIN, AHMED ABOUELENEIN, and ABDULLAH ABOUELENEIN, | : : : : X | **FLSA COLLECTIVE ACTION & RULE 23 CLASS ACTION** |
| Defendants. |  |  |

………………………………………………

Plaintiffs AHMED HEGAZY, SHRIEF SROR, RAMIZ SHEHATTA, WALID

SOLTAN, AHMED ABOUELKHAIR, and AHMED MONEIM ("Plaintiffs"), by and through

their attorneys, on behalf of themselves and all others similarly situated, allege, upon personal

knowledge as to themselves, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.       Plaintiffs bring this action, on behalf of themselves and other employees similarly

situated, against Defendants THE HALAL GUYS, INC., ALL 53 SW INC., NIGHT 53 SE INC.,

THE HALAL GUYS FRANCHISE INC., ALTAWHID FOOD SUPPLY INC., AHMED

ELSAKA, ABDELBASET ELSAYED, MOHAMED ABOUELENEIN, AHMED

ABOUELENEIN, and ABDULLAH ABOUELENEIN, (collectively referred to herein as

"Defendants") to remedy violations of the Fair Labor Standards Act, as amended ("FLSA"), 29

1

U.S.C. § 201 *et seq*.  Plaintiffs seek, for themselves and similarly situated employees, declaratory and injunctive relief, unpaid wages including unpaid overtime, liquidated damages, reasonable attorneys' fees, costs, and all other appropriate legal and equitable relief, pursuant to the FLSA and other applicable federal law.

2.      Plaintiffs also bring this action, on behalf of themselves and other employees similarly situated, to remedy violations of the New York Labor Law ("NYLL"), including NYLL § 190 *et seq*., § 650 *et seq.*, including 663(1), and 12 NYCRR § 146.  Plaintiffs seek, for themselves and all other similarly situated employees, declaratory and injunctive relief, unpaid wages including unpaid overtime, unpaid spread of hours pay, reimbursement of the costs of purchasing required uniforms, tips/gratuities retained by Defendants, interest, reasonable attorneys' fees, costs, liquidated damages, and all other appropriate legal and equitable relief, pursuant to the NYLL §§ 198, 663 and the supporting New York State Department of Labor regulations.

3.      Plaintiffs also bring this action, on behalf of themselves and other employees similarly situated, to remedy violations of NYLL § 195(1) and (3).  Plaintiffs seek, for themselves and all other similarly situated employees, statutory damages, costs, and reasonable attorneys' fees, and all other appropriate legal and equitable relief, pursuant to the NYLL § 198(1-b) and (1-d).

## JURISDICTION AND VENUE

4.      Jurisdiction of the Court over Plaintiffs' FLSA claims is invoked pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.      Jurisdiction of this Court over Plaintiffs' NYLL claims is invoked pursuant to 28 U.S.C. § 1367(a) in that the NYLL claims are so related to Plaintiffs' FLSA claims as to form the

same case or controversy under Article III of the United States Constitution.

3.      Venue is proper within this District, pursuant to 28 U.S.C. § 1391, because Defendants do business in, and accordingly reside in, this District.  Venue is further proper within this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## PARTIES

6.      Plaintiff AHMED HEGAZY resides in the County of Queens in the State of New York.

7.      Plaintiff Hegazy was employed by Defendants as a Food Server/Food Vendor, as described herein, from in or about July, 2014 until in or about the end of March, 2020.

8.      Plaintiff SHRIEF SROR resides in the County of Queens in the State of New York.

9.      Plaintiff Sror was employed by Defendants as a Food Server/Food Vendor, as described herein, from in or about 2009 until in or about July 2017.

10.      Plaintiff RAMIZ SHEHATTA resides in the State of Tennessee.

11.      Plaintiff Shehatta was employed by Defendants as a Food Server/Food Vendor, as described herein, from in or about May 2013 until in or about March 15, 2020.

12.      Plaintiff WALID SOLTAN resides in the County of Kings in the State of New York.

13.      Plaintiff Soltan was employed by Defendants as a Food Server/Food Vendor, as described herein, from in or about May 2015 until March, 2018.

14.      Plaintiff AHMED ABOUELKHAIR resides in the State of New Jersey.

15.      Plaintiff Abouelkhair was employed by Defendants as a Food Server/Food Vendor, as described herein, from in or about December 2010 until in or about March, 2020

16.     Plaintiff AHMED MONEIM resides in the State of New Jersey.

17.     Plaintiff Moneim was employed by Defendants as a Food Server/Food Vendor starting in or about October of 2015.  In addition to employing Plaintiff Moneim as a Food Server/Food Vendor, Defendants also employed Plaintiff Moneim as a hands-on, trainer beginning in 2016.

18.     Plaintiff Moneim's employment with Defendants ended in or around November 2020.

19.     Defendant THE HALAL GUYS, INC. is a New York Domestic Business Corporation registered in the State of New York with its principal executive office located in Astoria, New York, in the County of Queens.

20.     Defendant ALL 53 SW INC. is a New York Domestic Business Corporation registered in the State of New York with its principal place of business in Astoria, New York, located in the County of Queens.

21.     Defendant NIGHT 53 SE INC. is a New York Domestic Business Corporation registered in the State of New York with its principal executive office in Astoria, New York, in the County of Queens.

22.     Defendant THE HALAL GUYS FRANCHISE INC. is registered to do business in the State of New York as a foreign for profit corporation.  Defendant The Halal Guys Franchise Inc. is incorporated in the State of New Jersey.

23.     Defendant ALTAWHID FOOD SUPPLY INC. is a New York Domestic Business Corporation registered in the State of New York with its principal executive office in Astoria, New York, in the County of Queens.

24.     Defendants THE HALAL GUYS, INC., ALL 53 SW INC., NIGHT 53 SE INC., THE HALAL GUYS FRANCHISE INC., and ALTAWHID FOOD SUPPLY INC. (collectively the "Halal Guys" or the "Corporate Defendants") operate as a joint enterprise with unified operation and common control to achieve a common business purpose as defined by the FLSA. 29 U.S.C. § 203(r).

25.     Defendant AHMED ELSAKA ("Defendant Elsaka") is the owner, manager, and/or operator of each of the Corporate Defendants.

26.     Defendant Elsaka had, and has, the power to hire, fire, and set the wages and hours of all the employees of the Corporate Defendants, including Plaintiffs and others similarly situated, and regularly supervised Plaintiffs and the other employees working for the Corporate Defendants.

27.     Defendant ABDELBASET ELSAYED ("Defendant Elsayed") is the owner, manager, and/or operator of each of the Corporate Defendants.

28.     Defendant Elsayed had, and has, the power to hire, fire, and set the wages and hours of all the employees of the Corporate Defendants, including Plaintiffs and others similarly situated, and regularly supervised Plaintiffs and the other employees working for the Corporate Defendants.

29.     Defendant MOHAMED ABOUELENEIN a/k/a MOHAMMED ABOUELENEIN ("Defendant Abouelenein") is the owner, manager, and/or operator of each of the Corporate Defendants.

30.     Defendant Abouelenein is registered with the Secretary of State of the State of New York as the Chief Executive Officer of Defendants THE HALAL GUYS, INC. and ALTAWHID FOOD SUPPLY INC.

31.     Defendant Abouelenein had, and has, the power to hire, fire, and set the wages and hours of all the employees of the Corporate Defendants, including Plaintiffs and others similarly

situated, and regularly supervised Plaintiffs and the other employees working for the Corporate Defendants.

32.     Defendant AHMED ABOUELENEIN ("Defendant Ahmed Abouelenein") is the owner, manager, operator of Defendants, and/or CEO of each of the Corporate Defendants.

33.     Defendant Ahmed Abouelenein is registered with the Secretary of State of the State of New York as the Chief Executive Officer of Defendant THE HALAL GUYS FRANCHISE INC.

34.     Defendant Ahmed Abouelenein had, and regularly exercised, the power to hire, fire, and set the wages and hours of all the employees of the Corporate Defendants, including Plaintiffs and others similarly situated, and regularly supervised Plaintiffs and the other employees working for the Corporate Defendants.

35.     Defendant ABDULLAH ABOUELENEIN ("Defendant Abdullah Abouelenein") is the owner, manager, and/or operator of each of the Corporate Defendants.

36.     Defendant Abdullah Abouelenein had, and regularly exercised, the power to hire, fire, and set the wages and hours of all the employees of the Corporate Defendants., including Plaintiffs and others similarly situated, and regularly supervised Plaintiffs and the other employees working for the Corporate Defendants and determined how much each of them received in tips each week.

37.     Defendants grossed more than $500,000.00 in each of the last six calendar years.

38.     At all times relevant hereto, the activities of the Defendants jointly and separately constituted an "enterprise" within the meaning of § 3(r) & (s) of the FLSA, 29 U.S.C. § 203 (r) & (s).

39.     At all times relevant hereto, Defendants employed employees, including Plaintiffs and the members of the FLSA Collective, who were employed by Defendants' enterprise engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of § 3(b), (g), (i), (j) (r) and (s)(A)(i) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r), & (s)(A)(i).

40.     At all times relevant hereto, Defendants have been, and continue to be, an "enterprise engaged in commerce or in the production of goods for commerce," within the meaning of 29 U.S.C. § 203 and 29 U.S.C. § 207(a)(1).

41.     At all times relevant hereto, Defendants have been, and continue to be, an "employer" as defined by 29 U.S.C. § 203(D) and by the NYLL §190(3).  At all times relevant hereto, Defendants have employed "employee[s]", including Plaintiffs and each of the members of the FLSA Collective and Class Members.

## FACTUAL ALLEGATIONS

42.     Defendants operate what they call a "global enterprise, with over 400+ new restaurants in development worldwide" serving American Halal food throughout New York City and around the world.[1]

43.     Defendants advertise that their mission is to "delight each of our customers with unparalleled hospitality and mouthwatering food at great prices".[2]

---

[1] https://thehalalguys.com/about-us/#where-we-are-growing - accessed January 5, 2021.
[2] https://thehalalguys.com/about-us/#mission-vision – accessed January 5, 2021

44.     To prepare and serve their food and drinks, Defendants employed and continue to employ numerous Food Servers/Food Vendors, including Plaintiffs, members of the FLSA Collective, and the Class Members.

### HOURS OF WORK & PAYRATES

45.     Defendants operate their food-carts and restaurants almost twenty-four (24) hours a day.

46.     Defendants employed Plaintiffs, members of the FLSA Collective, and the Class Members to work five or six – or sometimes seven – shifts each week.  These shifts averaged ten or more hours per day.

47.     Until in or around the beginning of 2018, Defendants paid Plaintiffs, members of the FLSA Collective, and the Class Members a flat rate for each day worked regardless of the number of hours worked.

48.     Although Plaintiffs, members of the FLSA Collective, and the Class Members regularly worked as many as sixty hours or more per week, in violation of the FLSA and the NYLL, during the period that that they paid Plaintiffs, members of the FLSA Collective, and the Class Members a day rate, Defendants never paid them overtime at the rate of one and one half times their regular hourly rate for the hours over forty that they worked in a workweek.

49.     Even after they started to pay Plaintiffs, members of the FLSA Collective, and the Class Members an hourly rate, Defendants continued to pay some employees a flat day rate without overtime.

50.     For example, at the end of May 2018, Defendants had Plaintiff Shehatta sign a letter that stated that he was no longer employed by Defendants.

8

51.     After Plaintiff Shehatta signed the letter, Defendants continued to employ Plaintiff Shehatta, but paid him a flat day rate with no overtime premium—in cash.

52.     Even after they started paying Plaintiffs, members of the FLSA Collective, and the Class Members hourly rates of pay, Defendants only paid them for some – but not all – of their overtime hours.

53.     In or about the middle of 2019, Defendants began using a time clock.  Plaintiffs and their co-workers were instructed to use the last four digits of their phone numbers to clock in and out.

54.     However, Defendants did not record all work time – and Defendants often instructed Plaintiffs, members of the FLSA Collective, and the Class Members to start working before the beginning of their shift and/or to clock out before their work was done.  For example, Plaintiff Hegazy was instructed by Defendants to clock out when he finished his work at the food cart, although Defendants required him to continue working off-the-clock and take the money from the night shift and drive their vehicle to their Queens warehouse.

55.     As detailed above, Defendants failed to keep accurate and sufficient time records as required by Federal and State laws.

56.     Defendants failed to post or keep posted notices explaining the rights of employees under the FLSA and NYLL, causing Plaintiffs, the FLSA Collective and the Class Members to be uninformed of their rights.

57.     Defendants committed the foregoing acts knowingly, intentionally and willfully against the Plaintiffs, the members of the FLSA Collective and the Class Members.

## NEW YORK LABOR LAW VIOLATIONS

*Gratuities*

9

58.     Customers at Defendants' food carts and restaurants often paid extra money for their food as a gratuity for the employees.

59.     Defendants had a standard practice of combining the money that customers paid as a gratuity with the money that the customers paid for their food.

60.     At the end of the work shifts, it was impossible to determine accurately how much money had been intended by the customers as payment for food and how much money had been intended to go to the employees.

61.     Each day, Defendants would take all the money—both the money for food and the money intended as gratuities for the employees.

62.     Each week, when Defendants paid Plaintiffs, members of the FLSA Collective, and the Class Members, Defendants would pay them some—but not all—of the money intended by the customers as a gratuity as a "bonus."

63.     In violation of section 196-d of the NYLL and section 146-2.18 of the implementing Hospitality Industry Wage Order, Defendants kept some of the gratuities for themselves.

64.     Furthermore, Defendants would pick and choose which employees received the gratuities, giving more to employees they favored and less, or even none, to disfavored employees.

***Spread of Hours***

65.     Defendants regularly scheduled Plaintiffs, members of the FLSA Collective, and the Class Members to work shifts of more than ten hours.

66.     Despite the spread of hours requirements of the NYLL and its implementing regulations, Defendants never paid Plaintiffs, members of the FLSA Collective, and the Class

10

Members an additional hour of pay at the minimum hourly rate for these long shifts as required by 12 NYCRR § 146-1.6.

*Uniforms*

67.     Defendants required Plaintiffs, members of the FLSA Collective, and the Class Members to wear uniforms when working at their food carts and restaurants.

68.     Defendants did not supply Plaintiffs, members of the FLSA Collective, and the Class Members with sufficient uniforms to enable them to have a clean uniform each day that they worked.

69.     Serving and preparing food throughout the long shifts worked by Plaintiffs, members of the FLSA Collective, and the Class Members caused the uniforms to quickly become dirty and damaged.

70.     If a uniform was damaged, or Plaintiffs, members of the FLSA Collective, and the Class Members needed additional uniforms to enable them to wear a clean uniform each day during the six or seven days a week that they worked, Defendants did not provide extra uniforms and required Plaintiffs, members of the FLSA Collective, and the Class Members to pay for the replacement or additional uniforms.  Defendants never reimbursed Plaintiffs, members of the FLSA Collective, and the Class Members for these uniforms that they were required to buy.

*Notice Violations*

71.     Prior to 2018, Defendants never provided Plaintiffs, members of the FLSA Collective, and the Class Members a notice in writing of their wage and overtime rate at the time that they were hired, as required by section 195(1) of the NYLL.  Even after Defendants began to provide employees with the required notices, they did not provide <u>all</u> employees that they hired with these notices.

11

72.     Prior to 2018, Defendants regularly paid Plaintiffs, members of the FLSA Collective, and the Class Members in cash for some or all of their work and did not provide Plaintiffs, members of the FLSA Collective, and the Class Members with any wage statements or provided them with wage statements that included only part of their pay.

73.     Even after Defendants, began to provide wage statements to Plaintiffs, members of the FLSA Collective, and the Class Members that included all of their pay, Defendants did not provide wage statements that included <u>all</u> the hours worked by Plaintiffs, members of the FLSA Collective, and the Class Members.

74.     Furthermore, even after 2018, Defendants did not provide wage statements to <u>all</u> Plaintiffs, members of the FLSA Collective, and the Class Members.

<b><u>PLAINTIFFS</u></b>

*Ahmed Hegazy*

75.     At all times relevant to this action, Defendants employed Plaintiff Hegazy to work the night shift at a food cart located at the intersection of 53rd Street and 6th Avenue in Manhattan.

76.     Each night shift that Plaintiff Hegazy worked was scheduled from 7:00 pm until approximately 5:00 am on weekdays and until 5:30 am on weekends and holidays.

77.     Plaintiff Hegazy regularly arrived at work before 7:00 pm and was instructed to begin work early.

78.     Furthermore, Defendants regularly required Plaintiff Hegazy to drive their vehicle to their Queens warehouse after he completed work at the food cart.

79.     Plaintiff Hegazy regularly did not finish work until an hour after he completed work at the food cart.  Plaintiff Hegazy would finish work and leave Defendants' Queens warehouse at 6:00 or 6:30 am.

80.     At the beginning of the liability period for this action, Defendants paid Plaintiff Hegazy $120.00 for each day worked, regardless of the number of hours that he worked.

81.     Even after Defendants began paying Plaintiff Hegazy hourly, they regularly did not include the time that he worked before 7:00 pm or after he completed his work at the food cart in the hours that they paid him.

82.     Defendants regularly scheduled Plaintiff Hegazy to work six or even seven days a week.  During the period from in or around May 2015 until approximately January 2016, Defendants consistently scheduled Plaintiff Hegazy to work seven days each week.

83.     Thus Plaintiff Hegazy regularly worked sixty to seventy-five hours in a week and sometimes worked eighty or more hours in a workweek.

84.     Despite the many hours over forty that Plaintiff Hegazy worked each week, Defendants never paid him overtime at one half times his hourly rate before 2018.  Even after they began paying Plaintiff Hegazy overtime, they did not pay him for all the overtime hours that he worked.

85.     Furthermore, although Plaintiff Hegazy always worked shifts that were longer than ten hours, Defendants never paid him spread of hours pay at the minimum hourly wage rate.

***Shrief Sror***

86.     Plaintiff Shrief Sror regularly worked the night shift at Defendants' food cart located at 53rd Street and 7th Avenue in Manhattan.  Plaintiff Sror also worked at Defendants' food cart located at 53rd Street and 6th Avenue in Manhattan for a few weeks and had worked for Defendants at their food cart located at LaGuardia Community College in Queens (for about one month).

87.     Defendants paid Plaintiff Sror a day rate in cash throughout his employment with them.  Defendants never paid Plaintiff Sror an hourly rate.

88.     Defendants regularly required Plaintiff Sror to work six days a week and during some weeks they required him to work seven days.

89.     Although the night shift was scheduled to begin at 7:00 pm, Defendants told Plaintiff Sror that he had to arrive twenty to thirty minutes earlier to prepare, so Plaintiff Sror began work each day between 6:30 and 6:40 pm.

90.     Plaintiff Sror finished work between 4:00 and 4:30 am on weekdays and between 5:00 and 5:30 am on weekends.

91.     Thus, Plaintiff Sror worked over sixty hours each week and sometimes worked over seventy hours in a workweek.

92.     Despite the many hours over forty that Plaintiff Sror worked each week, Defendants never paid him overtime at one half times his hourly rate.

93.     Furthermore, although Plaintiff Sror worked shifts that were more than ten hours each week, Defendants never paid him spread of hours pay at the minimum hourly wage rate.

***Ramiz Shehatta***

94.     Plaintiff Ramiz Shehatta worked days at one of Defendants' food carts located at LaGuardia Community College in Queens.

95.     Plaintiff Shehatta worked six days a week – Monday through Saturday.  Sunday was his day off.

96.     Each day, Plaintiff Shehatta started work at 5:00 am.  On weekdays, Plaintiff Shehatta ended work at 6:00 pm and, on Saturdays, Plaintiff Shehatta ended work at 1:00 pm.

97.     Thus, Plaintiff Shehatta worked over sixty hours each workweek.

14

98.     When Plaintiff Shehatta began his employment with Defendants, they paid him cash at the rate of $130 per day.  In or around 2016, Defendants continued to Pay Plaintiff Shehatta the same day rate, but split the payment and paid part in cash and part by check.

99.     On May 25, 2018, Defendants required Plaintiff Shehatta to sign a letter stating that they "no longer require[d his] services."

100.     Despite receiving and signing the letter, Plaintiff Shehatta continued to work the same hours for Defendants for almost another two years until LaGuardia Community College closed because of Covid in March of 2020.

101.     However, after giving Plaintiff Shehatta the letter, Defendants resumed paying him in cash.

102.     With the possible exception of a few weeks in 2018, Defendants never paid Plaintiff Shehatta an overtime premium for the many hours over forty that he worked each workweek.

103.     Furthermore, although Plaintiff Shehatta worked five shifts that were more than ten hours each week, Defendants never paid him spread of hours pay at the minimum hourly wage rate.

***Walid Soltan***

104.     Plaintiff Walid Soltan worked six days per week at one of Defendants' food carts located at LaGuardia Community College in Queens and regularly worked a seventh shift at one of Defendants' 53rd Street food carts in Manhattan.

105.     Plaintiff Soltan started work at 9:00 am each day Monday through Saturday.  On weekdays he worked until 8:00 or 8:30 pm in the evening and on Saturday he would work at the LaGuardia Community College location until 6:00 pm.

15

106.    Two or three times a month, after Plaintiff finished work at the LaGuardia Community College location on Saturday, he would travel to Manhattan and work the night shift from 7:00 pm on Saturday until 5:00 am on Sunday at one of Defendants' food carts located on 53rd Street.

107.    Thus, Plaintiff Soltan regularly worked for sixty-five to seventy-five hours per week or more.

108.    Defendants always paid Plaintiff Soltan a flat day rate no matter how many hours he worked.

109.    When Plaintiff Soltan began his employment with Defendants, they paid him $120.00 per day.  By the time that his employment with Defendants ended on March 2, 2018, they paid him $135.00 per day.

110.    Despite the many hours over forty that Plaintiff Soltan worked each week, Defendants never paid him an overtime premium of one and half times his regular rate for those hours over forty that he worked in a workweek.

111.    Furthermore, although Plaintiff Soltan worked five or six shifts of more than ten hours, Defendants never paid him spread of hours pay at the minimum hourly wage rate.

***Ahmed Abouelkhair***

112.    Throughout his employment with Defendants, Plaintiff Ahmed Abouelkhair worked at their food card located at 53rd Street and 6th Avenue.

113.    From in or around 2014 until the beginning of 2018, Plaintiff Abouelkhair worked the day shift six days per week.  Defendants required Plaintiff Abouelkhair to start work at 9:00 am to prepare the food before the food cart opened for business.  Plaintiff Abouelkhair finished work around 7:00 pm each day.

114.     Thus, Plaintiff Abouelkhair worked approximately sixty hours per week during this period of his employment.  Despite the many hours over forty that Plaintiff Abouelkhair worked each week, Defendants never paid him overtime at the rate of one and one half times his regular rate.

115.     In 2018, Plaintiff Abouelkhair began to work part-time for Defendants.  Plaintiff Abouelkhair would work two or three days per week from 9:00 am until 7:00 pm.

116.      During this period of Plaintiff Abouelkhair's employment with Defendants, they paid him an hourly rate.

117.     Throughout Plaintiff Abouelkhair's employment with Defendants, they never paid him spread of hours pay at the minimum hourly wage rate.

**Ahmed Moneim**

118.     For approximately the first six months of Plaintiff Ahmed Moneim's employment with Defendants, he was assigned to work at their food cart located on 53rd Street and 6th Avenue in Manhattan.

119.     While working at 53rd Street and 6th Avenue, Plaintiff Moneim began work at 9:00 am and finished work at 7:00 pm six days per week – Monday through Saturday – with Sunday off. Thus, Plaintiff Moneim worked approximately sixty hours per week.

120.     After Plaintiff Moneim had worked for Defendants for approximately six months, Defendants assigned him to work at their LaGuardia Community College food cart Monday through Friday and at 53rd Street and 6th Avenue on Saturday.

121.     For approximately the next six months, Plaintiff Moneim worked from 9:00 am until approximately 8:00 pm at LaGuardia and from 9:00 am until 7:00 pm on Saturdays at 53rd

Street, during this period.  Thus Plaintiff Moneim worked approximately sixty-five hours per week during this period.

122.    During the first year of Plaintiff Moneim's employment with Defendants, they paid him a flat day rate of $120 per day, without respect to the number of hours that he worked each day.

123.    Despite the many hours over forty that Plaintiff Moneim worked each week, Defendants never paid him overtime at the rate of one and one half times his regular rate for the hours over forty that he worked in a workweek.

124.    In 2016, Defendants transferred Plaintiff Moneim to their store on 14th Street and 2nd Avenue.  During this period, Plaintiff Moneim also worked at Defendants' location at 95th Street and Amsterdam Avenue at times.

125.    After Defendants transferred Plaintiff Moneim to 14th Street and 2nd Avenue, they expanded his responsibilities and designated him as a trainer, along with five to nine other employees, to provide hands on training to new franchise owners and their employees.

126.    Defendants assigned Plaintiff Moneim to work from 8:30 or 9:00 am until 8:00 or 9:00 pm six days a week after he was designated as a trainer.

127.    When franchises opened in other states or countries such as Texas, California, Illinos, and London, Defendants assigned Plaintiff Moneim to travel to the opening.

128.    Plaintiff was required to work long hours to prepare for these openings—from 7:00 am until 1:00 am—seven days a week.

129.    Although Plaintiff Moneim did not work in an office and he had no employees reporting to him or power to make decisions of importance to the business, Defendants

misclassified Plaintiff Moneim as a salaried, overtime exempt, employee after they designated him as a trainer.

130.    After Defendants misclassified of Plaintiff Moneim's as exempt, his primary duties continued to be physically preparing and serving food.

131.    While he was classified as an exempt trainer, Defendants paid Plaintiff Moneim every other week on a salary basis.

132.    Despite the long hours that Plaintiff Moneim worked, Defendants never paid him overtime at one and one half times his regular hourly rate for the many hours over forty that he worked in a workweek.

133.    Furthermore, although Plaintiff Moneim regularly worked shifts of more than ten hours, Defendants never paid him spread of hours pay at the minimum hourly wage rate.

## STATUTE OF LIMITATIONS

134.    On April 19, 2018, two Food Server/Food Vendor employees of Defendants, Ahmed Elshamy and Emad Ali, filed a class action complaint in the Southern District of New York against Defendants alleging violations of the FLSA and the NYLL, including failure to pay overtime, failure to pay spread of hours pay and cost of uniforms, illegal deductions from the gratuities that customers intended as tips for employees, and failure to provide notices and wage statements as required by the NYLL section 195(1) and (3). *Elshamy et al. v. The Halal Guys, Inc.*, No. 18-cv-03468 (AT)(GWG).

135.    The Parties agreed to settle the case for the original two plaintiffs and four opt-in plaintiffs and the action was discontinued 299 days later on February 12, 2019.

136.    It is well settled law that "[c]ommencement of a class action tolls the statute of limitations for the claims of all potential members of the class." *In re Payment Card Interchange*

*Fee and Merch.Disc. Antitrust Litig.*, 05-MD-1720 (MKB), 2018 WL 4158290, at *13 (E.D.N.Y. Aug. 30, 2018); see *American Pipe & Const. Co. v. Utah*, 414 U.S. 538,539 (1974) (ruling that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action").

137.    In addition, prior to the filing of this lawsuit the parties engaged in settlement discussions and entered into a series of agreements tolling the statute of limitations for claims set forth in this Complaint (provided in draft format to Defendants' counsel) – for Plaintiff Hegazy "and other present and former hourly, non-exempt employees of Defendants who are determined by the Court to be similarly situated, including but not limited to Shrief Sror, Walid Soltan, Ramiz Shehatta, Ahmed Abouelkhair, and Ahmed Moneim" – to allow the parties to continue settlement negotiations.

138.    The tolling agreements tolled the limitations period from February 8, 2021 until February 28, 2022, for a total of 385 days.

139.    Therefore all applicable statutes of limitations for the claims in this action are tolled for 299 plus 385 days, for a total of 684 days.

## FLSA COLLECTIVE ACTION ALLEGATIONS

140.    Plaintiffs bring the First Cause of Action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all servers and food-cart workers who were employed by Defendants on or after the date that is three years and 684 days years prior to the filing of this Complaint to the entry of judgment in this case.  All said persons, including Plaintiffs, are referred to herein as the members of the "FLSA Collective."

141.     At all relevant times, Plaintiffs and the other members of the FLSA Collective are and have been similarly situated, have had substantially similar job requirements, and job duties, and are and have been subject to Defendants' common policies and practices of willfully violating the Fair Labor Standards Act as set forth in this complaint.  The claims of Plaintiffs herein are essentially the same as those of the other members of the FLSA Collective.

142.     Other servers and food-cart workers currently or formerly employed by Defendants should have the opportunity to have their claims for violations of the FLSA heard.  Certifying this action as a collective action under the FLSA will provide other servers and food-cart workers notice of the action and allow them to opt in to such an action if they so choose.

143.     The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to section 16(b) of the FLSA, 29 U.S.C. 216(b).  The members of the FLSA Collective are readily ascertainable.  For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants based on records they are required to maintain by law.  Notice can be provided to the members of the FLSA Collective via first class mail to the last addresses known to Defendants and by notices posted at Defendants' food carts and restaurants where the members of the FLSA Collective work.

**RULE 23 CLASS ALLEGATIONS – NEW YORK LABOR LAW**

144.     Plaintiffs bring the Second, Third, and Fourth Causes of Action pursuant to Fed. R. Civ. P. ("FRCP") Rule 23, to recover unpaid wages, unpaid overtime pay, unpaid spread of hours pay, illegally withheld tips/gratuities, reimbursement of the costs of purchasing required uniforms, liquidated damages, and statutory damages on behalf of a class of all individuals employed by Defendants as Food Servers/Food Vendors on or after the date that is six years and 684 days before the filing of the original Complaint in this case until the entry of judgment in this case (the "Class

Period").  All said persons, including Plaintiffs, are referred to herein as the "Class Members" and/or the "Class".

145.    The number, names and addresses of the Class Members are readily ascertainable from the records of the Defendants.  The dates of employment and the rates of pay for each Class Member, the hours assigned, and the wages paid to them, are also determinable from Defendants' records.  Notice can be provided by means permissible under FRCP Rule 23.

146.    The proposed Class is so numerous that joinder of all Class Members is impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. While the precise number of such persons is unknown to Plaintiffs and is presently within the sole control of Defendants, Plaintiffs believe that through discovery they will obtain evidence to establish that there are well over forty members of the Class.

147.    Plaintiffs' claims are typical of the claims of the Class Members, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions. All the Class Members were subject to the same enterprise-wide practices of Defendants, in that they were not properly compensated for all hours and overtime hours worked and for spread of hours pay.  Furthermore, Defendants illegally withheld tips/gratuities from all the Class Members and failed to reimburse them for the costs of purchasing required uniforms.  Moreover, all of the Class Members were subject to Defendants' policies of failing to give the Class Members the required NYLL §195(1) notices at  their hiring and failing to give the Class Members the wage statements required by NYLL § 195(3).  Defendants' enterprise-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

148.     As fellow employees of Defendants, which failed to compensate Plaintiffs and the Class Members as required by law, Plaintiffs and the other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

149.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent in employment and wage and hour litigation and class action litigation.  Plaintiffs' counsel have many times previously represented plaintiffs in wage and hour class cases.

150.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual Class Members are relatively small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of Class

Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

151.    Upon information and belief, employees are often afraid to individually assert their rights out of fear of direct or indirect retaliation and former employees are fearful of bringing individual claims because of the fear that doing so could harm their employment, future employment, and future efforts to secure employment. A class action provides Class Members who are not named in the Complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

152.    The questions of law and fact common to the Class predominate over any questions affecting only individual Class Members, including:

      a      Whether Defendants failed to pay Class Members one and one half times their regular hourly rates, as required by 12 NYCRR § 146-1.4, for all hours worked in excess of forty (40) in a workweek;

      b      Whether Defendants paid spread of hours premiums to the Class Members for all days on which the Class Members' spread of hours exceeded ten (10) hours, as required by 12 NYCRR § 146-1.6;

      c      Whether Defendants failed to reimburse Class Members for the costs of purchasing required uniforms, in violation of 12 NYCRR § 146-1.7 and 1.8;

      d      Whether Defendants illegally withheld/retained, and failed to pay Class Members their tips/gratuities;

24

e        Whether Defendants provided written notices to the Class as required by 12

NYCRR § 146-2.2 and NYLL § 195(1); and

f        Whether the pay statements that Defendants issued to the Class violated 12

NYCRR § 146-2.3 and NYLL § 195(3).

153.    Absent a class action, many of the Class Members likely will not obtain redress of

their injuries and Defendants will retain the proceeds of their violations of the NYLL.

## **FIRST CAUSE OF ACTION**

**(Fair Labor Standards Act, Brought by Plaintiffs on Behalf of
Themselves and the Members of the FLSA Collective)**

154.    Plaintiffs, on behalf of themselves and the members of the FLSA Collective,

reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

155.    Plaintiffs consent in writing to be parties to this action under 29 U.S.C. § 216(b).

See Exhibit A attached hereto.

156.    At all times relevant hereto, Plaintiffs and the members of the FLSA Collective

have been employed in an enterprise engaged in commerce or in the production of goods   for

commerce, within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(s)(1)(a).

157.     Defendants willfully and repeatedly violated the Fair Labor Standards Act, 29

U.S.C. §§ 207 and 215(a)(2), by failing to pay Plaintiffs and the members of the FLSA Collective

at a rate not less than one and one-half times their regular rates of pay  for all work performed in

excess of forty hours in a workweek.

158.     Defendants are liable to Plaintiffs and the members of the FLSA Collective  for

unpaid overtime compensation.

159.     Plaintiffs and the members of the FLSA Collective are further entitled to recover

from Defendants an equal amount as liquidated damages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).

160.     At all times relevant hereto, Defendants had a policy and practice of refusing to pay all of the overtime compensation owed to their employees for all hours worked in excess of forty hours per workweek.

161.     At all times relevant hereto, Defendants willfully, regularly, repeatedly, and knowingly failed to pay Plaintiffs and the members of the FLSA Collective the statutorily required overtime rates for all hours worked in excess of forty (40) hours per workweek.

162.     Defendants' violation was willful and a three year limitations period should apply under 29 U.S.C. § 255(a).

163.     Plaintiffs, on behalf of themselves and the members of the FLSA Collective, seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA, pre-and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION

**(NYLL - Failure to Pay Spread of Hours Pay & Overtime Wages & Costs of Uniform, Brought by Plaintiffs on Behalf of Themselves and the Class)**

164.     Plaintiffs, on behalf of themselves and the Class Members, reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

165.     At all relevant times, Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL §651 and 12 NYCRR § 146-3.2.

166.     It is unlawful under New York law for an employer to suffer or permit an employee to work without compensation for all hours worked.

167.   It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime premiums for all hours worked in excess of forty (40) hours in any workweek.

168.   Throughout the Class Period, Defendants willfully, regularly, repeatedly and knowingly failed to pay Plaintiffs and the Class Members for all of the overtime hours worked at the required overtime rates for hours worked in excess of forty (40) hours per workweek.

169.   Defendants violated and are violating Plaintiffs' and the Class Members' rights by failing to pay or  underpaying Plaintiffs and the Class Members the required overtime wages, in violation of NYCRR § 146-1.4 and by failing to pay Plaintiffs and the Class Members for all hours worked.

170.   Defendants violated and are violating Plaintiffs' and the Class Members' rights by failing to pay or  underpaying Plaintiffs and the Class Members the required spread of hours pay, in violation of NYCRR § 146-1.6.

171.   Defendants violated and are violating Plaintiffs' and the Class Members' rights by failing to reimburse Plaintiffs and the Class Members for the costs of purchasing required uniforms, in violation of NYCRR § 146-1.7 and 1.8.

172.   Defendants' failure to timely pay the Plaintiffs and the Class Members the foregoing amounts is a violation of the NYLL.

173.   Pursuant to the NYLL, Defendants are liable to Plaintiffs and the Class Members for unpaid or underpaid (1) overtime compensation, (2) hourly pay, (3) spread-of-hours  wages, and  (4) uniform costs.

174.   Plaintiffs and the Class Members are further entitled to recover liquidated damages, pursuant to NYLL § 198 and § 663(1).

27

175. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and the Class Members have sustained damages, including loss of earnings, in an amount to be established at trial.

176. Plaintiffs, on behalf of themselves and the Class Members, seek damages in the amount of their respective unpaid overtime compensation, hourly pay, spread of hours pay, costs of purchasing uniforms, liquidated damages, prejudgment interest at the statutory rate, post judgment interest, attorneys' fees and costs, pursuant to the NYLL, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION

**(Illegal Tip Deductions, Brought by Plaintiffs on Behalf of Themselves and the Class)**

177. Plaintiffs, on behalf of themselves and the Class Members, reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

178. Defendants violated §196-d of the NYLL by unlawfully retaining, and failing to distribute to Plaintiffs and the Class, all the tips and gratuities that customers paid to them—instead distributing them to Defendants' owners, managers and/or other employees who were not entitled to them.

179. As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiffs and the Class Members have sustained damages, including the loss of earnings, in an amount to be established at trial.

180. Due to Defendants' NYLL violations, Plaintiffs, on behalf of themselves and the Class Members, seek damages in the amount of their respective tips and gratuities, liquidated damages, pre-judgment interest at the statutory rate and post-judgment interest, attorneys' fees and

costs, as provided by the NYLL, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION

### (Notice Violations Brought by Plaintiffs on Behalf of Themselves and the Class)

181.    Plaintiffs, on behalf of themselves and the Class Members, reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

182.    Defendants failed to furnish to Plaintiffs and the Class Members, at the time of hiring, a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; any doing business as names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the Wage Theft Prevention Act, NYLL § 195(1) and NYCRR § 146-2.2.

183.    Defendants failed to furnish to Plaintiffs and the Class Members with each wage payment an accurate statement listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of the Wage Theft Prevention Act, N.Y. Lab. Law § 195(3) and NYCRR § 146-2.3.

184.     Defendants violated NYLL **§** 195(1) and (3) and consequently owe Plaintiffs and the Class Members statutory damages as specified by NYLL § 198(1-d).

185.     Plaintiffs, on behalf of themselves and the Class Members, seek statutory damages as specified by NYLL § 198(1-b) and (1-d), reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves, the members of the FLSA Collective, and the Class Members, pray for relief as follows:

(a)     Certification of this action as a collective action as it relates to the First Cause of Action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all members of the FLSA Collective described herein apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

(b)     Designation of Plaintiffs and their counsel to represent the members of the FLSA Collective;

(c)     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 as it relates to the Second, Third, and Fourth Causes of Action;

(d)     Certification of Plaintiffs as class representatives and designation of Plaintiffs' counsel as class counsel;

(e)     An award of unpaid overtime compensation, unpaid hourly compensation, tips and gratuities, and spread of hours pay, according to proof, including FLSA and NYLL liquidated damages, and interest, to be paid by Defendants;

(f)     An award of the unreimbursed costs of required uniforms;

(g)     Statutory damages under NYLL § 198(1-b) and (1-d) for violations of NYLL § 195(1) and (3);

(h)     Costs of action incurred herein, including expert fees;

(i)     Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, NYLL § 663;

(j)     Pre-Judgment and post-judgment interest, as provided by law; and

(k)     Such other and further legal and equitable relief as this Court deems necessary, just and proper.


Dated: March 3, 2022

HARRISON, HARRISON & ASSOCIATES, LTD.

_____/s/DAVID HARRISON_____
David Harrison, Esq.
Julie Salwen, Esq.
dharrison@nynjemploymentlaw.com
jsalwen@nynjemploymentlaw.com
110 State Highway 35, Suite 10
Red Bank, NJ 07701
(718) 799-9111 Phone
*Attorneys for Plaintiffs and the Proposed FLSA Collective and Class Members*