UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
·················································X
AHMED HEGAZY, SHRIEF SROR, RAMIZ            :
SHEHATTA, WALID SOLTAN, AHMED              :
ABOUELKHAIR, and AHMED MONEIM on           :
behalf of themselves and all others similarly   :        **Index No. 1:22-cv-01880**
situated,                                   :
                                           :
            Plaintiffs,                     :
        v.                                  :
                                           :
THE HALAL GUYS, INC., ALL 53 SW INC.,       :
NIGHT 53 SE INC., THE HALAL GUYS            :
FRANCHISE INC., ALTAWHID FOOD               :
SUPPLY INC., AHMED ELSAKA,                  :
ABDELBASET ELSAYED, MOHAMED                 :
ABOUELENEIN a/k/a MOHAMMED                  :
ABOUELENEIN, AHMED ABOUELENEIN, and         :
ABDULLAH ABOUELENEIN,                       :
                                           :
            Defendants.                     :
·················································X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
CONDITIONAL COLLECTIVE CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)**


**HARRISON, HARRISON & ASSOC., LTD**
David Harrison, Esq.
Julie Salwen, Esq.
110 State Highway 35, 2nd Floor
Red Bank, NJ 07701
Telephone: 888-239-4410

*Attorneys for Plaintiffs, proposed collective
action members, and proposed class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

I.     PRELIMINARY STATEMENT ........................................................................... 1

II.    FACTUAL BACKGROUND .................................................................................. 2

   A.   The Parties ........................................................................................................ 3

   B.   Defendants Failed to Pay FLSA Collective Members Overtime for All Hours in
        Worked in Excess of Forty in a Workweek ................................................... 8

   C.   Statute of Limitations ...................................................................................... 9

III.   ARGUMENT .......................................................................................................... 11

   A.   Legal Standard for Conditional Certification and Court-Authorized Notice ................ 12

   B.   Plaintiffs Have Made The Modest Factual Showing Required For Conditional
        Certification. .................................................................................................... 13

   C.   The Underlying Merits Of The Case Are Immaterial To The Determination Of
        Conditional Certification And Notice ............................................................ 15

   D.   The Proposed Notice Of Pendency Is Fair And Adequate ........................... 16

   E.   Notice Should Be Sent To All Putative FLSA Collective Members Who Worked For
        Defendants On Or After February 12, 2018 ................................................... 18

   F.   Discovery Of Potential Opt-In Plaintiffs' Names And Contact Information Is Proper
        And Necessary ................................................................................................. 19

   G.   The Proposed Notice Should Be Posted In In Accessible Places At Each Jobsite Where
        Putative Collective Members Are Likely To See It ....................................... 19

IV.    CONCLUSION ...................................................................................................... 20

## TABLE OF AUTHORITIES

CASES                                                           Page(s)

*Alonso v. Uncle Jack's Steakhouse, Inc.*,
    648 F. Supp. 2d 484 (S.D.N.Y. 2009)..........................................................  11

*American Pipe & Const. Co. v. Utah*,
    414 U.S. 538 (1974).......................................................................................  10

*Bhumithanarn v. 22 Noodle Mkt. Corp.*
    No. 14-cv-3624, 2015 WL 4240985, (S.D.N.Y. July 13, 2015).................  17

*Chen v. Dun Huang Corp.*,
    19-CV-11883, 2021 WL 5234421 (S.D.N.Y., Nov. 8, 2021).....................  18

*Davis v. Abercrombie & Fitch Co.*,
    No. 08 Civ. 1859, 2008 WL 4702840 (S.D.N.Y. Oct 23, 2008) ...............  16

*Diatta v. Iguana New York, Ltd.*,
    2016 WL 2865132 (S.D.N.Y. May 10, 2016) ...........................................  13, 15, 19

*Fasanelli v. Heartland Brewery, Inc.*,
    516 F. Supp. 2d 317 (S.D.N.Y. 2007)........................................................  17

*Flood v. Just Energy Marketing Corp.*,
    2016 WL 354078 (S.D.N.Y. Jan. 25, 2016) ..............................................  15-19

*Foster v. Food Emporium*,
    No. 99 CIV 3860 CM, 2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000).......  12

*Gaspar v. Personal Touch Moving, Inc.*,
    No. 13-cv-8187, 2014 WL 4593944 (S.D.N.Y. Sept. 15, 2014) ...............  11, 15

*Gonzalez v. Hanover Ventures Marketplace LLC*,
    No. 21-CV-1347, 2022 WL 193004 (S.D.N.Y., Jan. 21, 2022) ................  13

*Hoffman-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989)......................................................................................  11

*Hong v. Haiku @ WP Inc.*,
    No. 19 Civ. 5018, 2022 WL 263575 (S.D.N.Y., Jan. 28, 2022)................  12, 17, 19

*Imbarrato v. Banta Management Services, Inc.*,
    No. 18-cv-5422, 2022 WL 1210868 (S.D.N.Y., 2022) .............................  18

*Juarez v. 449 Rest., Inc.*,
    29 F. Supp. 3d 363 (S.D.N.Y. 2014).........................................................  16

*Julian v. MetLife, Inc.*,
    298 F. Supp. 3d 699 (S.D.N.Y. 2018)................................................................. 13, 16

*In re Payment Card Interchange Fee and Merch.Disc. Antitrust Litig.*,
    05-MD-1720 (MKB), 2018 WL 4158290 (E.D.N.Y. Aug. 30, 2018)...................... 10

*Infantino v. Sealand Contractors Corp.*,
    2021 WL 4472475, at *14 (W.D.N.Y., Sept. 30, 2021) ............................................ 14

*Kuebel v. Black & Decker Inc.*,
    643 F.3d 352 (2d Cir. 2011)....................................................................................... 9

*Lynch v. United Servs. Auto. Ass'n*,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007)......................................................... 11, 16

*Martinenko v. 212 Steakhouse Inc.*,
    22-cv-518 (LJL), 2022 WL 1227140 (S.D.N.Y., Apr. 26, 2022) ................... 12, 17

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)..................................................................................... 12

*Ramos v. Platt*,
    No. 13-CV-8957-GHW, 2014 WL 3639194 (S.D.N.Y. July 23, 2014) ................. 13

*Salomon v. Adderley Indus.*,
    847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012)............................................................ 13

*Santiago v. Information Resources Inc.*,
    20-CV-7688 (AT)(SN), 2022 WL 476091 (S.D.N.Y., Feb. 16, 2022)..................... 15

*Shajan v. Barolo, Ltd.*,
    No. 10 CIV. 1385 (CM), 2010 WL 2218095 (S.D.N.Y. June 2, 2010)................... 16

*Williams v. Movage, Inc.*,
    No. 17 CIV. 2628 (KPF), 2018 WL 1940435 (S.D.N.Y. Apr. 24, 2018)................. 14

*Wood v. Mike Bloomberg 2020, Inc.*,
    484 F.Supp.3d 151 (S.D.N.Y., Sep. 3, 2020)................................................... 15-16

## STATUTES & REGULATIONS

29 U.S.C. 207(a)(1)....................................................................................................... 8

29 U.S.C. § 216(b) ............................................................................................... *passim*

29 U.S.C. § 255 ............................................................................................................ 12

29 U.S.C. § 256(b) ....................................................................................................... 12

N.Y. Lab. L. § 198(3) ................................................................................................... 11

29 C.F.R. § 778.109 ............................................................................................................    9

## I.    PRELIMINARY STATEMENT

Plaintiffs Ahmed Hegazy, Shrief Sror, Ramiz Shehatta, Walid Soltan, Ahmed Abouelkhair, and Ahmed Abdelmoneim[1] (collectively, "Plaintiffs") worked as Food Server/Food Vendors at the food-carts and restaurant stores of The Halal Guys, Inc., All 53 SW Inc., Night 53 SE Inc., The Halal Guys Franchise Inc., Altawhid Food Supply Inc., Ahmed Elsaka, Abdelbaset Elsayed, Mohamed Abouelenein, Ahmed Abouelenein, and Abdullah Abouelenein (collectively the "Halal Guys" or "Defendants").[2]  Plaintiffs brought this action on behalf of themselves and all other individuals who worked as non-exempt Food Server/Food Vendors at Defendants' New York City food-carts and/or restaurant stores pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") to recover unpaid overtime and other wages.

Plaintiffs now seek conditional certification of an FLSA Collective of all individuals who worked as full-time, non-exempt Food Server/Food Vendors at Defendants' food carts and restaurant stores in New York City at any time starting on February 12, 2018,[3] until the present (the "FLSA Collective").  Plaintiffs further seek to have Plaintiffs Ahmed Hegazy and Ramiz Shehatta (collectively the "FLSA Representative Plaintiffs") designated as representatives of the

---

[1] Plaintiff Ahmed Abdelmoneim's surname was mistakenly given as "Moneim," instead of "Abdelmoneim," in the caption to this action.  Plaintiffs will be correcting the caption to reflect Mr. Abdelmoneim's accurate surname.

[2] With this motion, Plaintiffs submit the May 26, 2022 declaration of David Harrison ("Harrison Decl."), attaching thereto the tolling agreement executed by the parties, dated January 25, 2022 as Exhibit 1, and the Proposed Notice of this Collective Action as Exhibit 2, and Consent to Join Lawsuit Form as Exhibit 3.  Plaintiffs also submit with this motion the declarations of Plaintiffs Ahmed Hegazy ("Hegaszy Decl."), Ramiz Shehatta ("Shehatta Decl."), Ahmed Abouelkhair ("Abouelkhair"), and Ahmed Abdelmoneim ("Abdelmoneim Decl.").  In addition, Plaintiffs rely on their Amended Complaint dated April 28, 2022, ECF No. 20 ("Am. Compl.")

[3] Prior to the filing of this action, the Parties entered into a series of tolling agreements that tolled the statute of limitations for the claims set forth in Plaintiffs' original Complaint (provided in draft form to Defendants' counsel) for Plaintiff Hegazy "and other present and former hourly, non-exempt employees of Defendants who are determined by the Court to be similarly situated."  The agreements tolled the limitations period for a total of 385 days – from February 8, 2021 until February 28, 2022. *See* Harrison Decl. ¶ 3 & Ex. 1.

FLSA Collective.[4]  Plaintiffs allege that, in violation of the FLSA, Defendants had a policy and practice of failing to pay members of the FLSA Collective overtime, as required by the FLSA, at the rate of one and one half times their regular hourly rate for all hours worked in excess of forty (40) in a workweek.

Specifically, by the instant motion, Plaintiffs respectfully ask the Court for:

(1)    Conditional certification of this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b);

(2)    Court facilitated notice of this action via first class mail, e-mail, text message, and directed social media postings to the accounts of all non-exempt Food Server/Food Vendors who worked at Defendants' New York City food carts and/or restaurant store locations at any time from February 12, 2018 to the present;

(3)    Production in Excel format of names, last known addresses, last known home and cell phone numbers, last known e-mail addresses, dates and location(s) of employment, social media user names, and position(s) held, of all FLSA Collective members; and

(4)    Posting of the Notice, along with the Consent to Join Lawsuit forms, in a conspicuous location at each of Defendants' New York City food carts and restaurant stores.

## II.    FACTUAL BACKGROUND

Plaintiffs filed their Original Complaint in this action on March 4, 2022.  (ECF No. 1; *See also* Harrison Decl. ¶ 2.)  Prior to the filing of the Complaint, the Parties had spent over a year attempting to resolve their dispute prior to litigation.  (Harrison Decl. ¶ 3.)  After Plaintiffs filed

_____

[4] Plaintiffs Schrief Sror and Ahmed Abdelmoneim are not members of the FLSA Collective because Plaintiff Sror's employment with Defendants ended before the start of the FLSA limitations period and Plaintiff Abdelmoneim was misclassified as an exempt employee.  Plaintiffs Walid Soltan and Ahmed Abouelkhair only have minimal FLSA claims, Plaintiff Soltan because he left Defendants' employ shortly after the start of the FLSA limitations period and Plaintiff Abouelkhair because he switched to part-time shortly after the start of the FLSA limitations period—although theyeach have significant NYLL claims.

their Complaint, on April 14, 2022, Defendants filed a letter to the Court stating that they intended to move for dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 13.) In response, Plaintiffs filed an Amended Complaint on April 28, 2022. (ECF No. 20 [hereafter Am. Compl.].) By order of this Court dated May 20, 2022, Defendants have until June 2, 2022, to answer or otherwise respond to Plaintiffs' Amended Complaint. (ECF No. 24.)

### A.    The Parties

Defendants operate what they call a "global enterprise, with over 400+ new restaurants in development worldwide" serving American Halal food throughout New York City and around the world. (Am. Compl. ¶ 43.) They advertise that their mission is to "delight each of our customers with unparalleled hospitality and mouthwatering food at great prices". (Am. Compl. ¶ 44.) Defendants Ahmed Elsaka, Abdelbaset Elsayed, and Mohamed Abouelenein founded the Halal Guys business. *The Halal Guys, Our Founders*, https://thehalalguys.com/about-us/ (visited on 5/26/2022). Along with Defendants Ahmed Abouelenein, and Abdullah Abouelenein, Defendants Elsaka, Elsayed and Mohamed Abouelenein (collectively the "Individual Defendants") co-own, and manage and/or operate the corporate defendants – The Halal Guys, Inc., All 53 SW Inc., Night 53 SE Inc., The Halal Guys Franchise Inc., Altawhid Food Supply Inc. (Am. Compl. ¶¶ 25-37, 57-63, 65-75.) Each of the Individual Defendants had the power to hire, fire and set the wages and hours of Defendants' employees and they regularly supervised Plaintiffs and the other employees working for Defendants. (*Id*.)

Defendants currently operate four food carts on 53rd Street in Manhattan and three restaurant stores located at 307 East 14th Street, New York, New York 10003, 720 Amsterdam Avenue, New York, New York 10025, and 24-08 40th Avenue, Long Island City, New York 11101. (*The Halal Guys, Location Finder*, https://thehalalguys.com/locations/location-finder/

3

(visited 5/26/2022); Hegazy Decl. ¶ 4; Abdelmoneim Decl. ¶¶ 7-9.)  Prior to the Covid shutdown in March of 2020, Defendants also operated food carts at LaGuardia Community College in Queens, New York.  (Shehatta Decl. ¶ 3.)

Plaintiffs all worked for Defendants as Food Server/Food Vendors.  (Am. Compl. ¶¶ 7, 9, 11, 13, 15, 17.)  As Food Server/Food Vendors, Plaintiffs' primary job responsibilities were to cook food and serve and sell it to the public.  (Hegazy Decl. ¶ 6; Shehatta Decl. ¶ 4; Abouelkhair Decl. ¶ 5; Abdelmoneim Decl. ¶¶ 5-6.)  During the FLSA limitations period, Defendants employed Representative Plaintiffs Hegazy and Shehatta and Plaintiffs Abouelkhair and Abdelmoneim as Food Server/Food Vendors.[5]  (Hegazy Decl. ¶¶ 3-4; Shehatta Decl. ¶ 3; Abouelkhair Decl. ¶¶ 3-7; Abdelmoneim Decl. ¶¶ 3-7.)

Defendants hired Representative Plaintiff Hegazy in or around July of 2014 to work as a Food Server/Food Vendor in their four food carts located on 53rd Street in Manhattan.  (Hegazy Decl. ¶¶ 3-4.)  Representative Plaintiff Hegazy's employment with Defendants ended in March of 2020.  (Hegazy Decl. ¶ 3.)  During his employment with Defendants, Representative Plaintiff Hegazy worked at all four of Defendants' food carts located on 53rd Street.  (Hegazy Decl. ¶ 4.)  Defendants scheduled Representative Plaintiff Hegazy six and sometimes seven days per week.  (Hegazy Decl. ¶ 5.)  On weekdays Representative Plaintiff Hegazy was scheduled to work from 7:00 pm until 4:00 am and on weekends and holidays his shift ended at 5:00 am.  (Hegazy Decl. ¶ 11.)  Thus, Defendants scheduled Representative Plaintiff Hegazy to work a minimum of fifty-six (56) hours per week.

In addition to his scheduled shifts, Defendants required Representative Hegazy to work extra time—for which they did not pay him—before and after his shifts.  Defendants' General

---

[5] In addition, Plaintiff Walid Soltan worked for Defendants for approximately three weeks during the FLSA limitations period.

Manager, Mohamed Omar, required Food Server/Food Vendors, including Representative Plaintiff Hegazy, to arrive at work half an hour before their scheduled start times and start working if it was busy. (Hegazy Decl. ¶ 12.) Likewise, if it was busy when their shifts ended, Representative Plaintiff Hegazy and the other Food Server/Food Vendors had to stay and continue working at the food carts for an extra thirty (30) to sixty (60) minutes. (Hegazy Decl. ¶¶ 11, 13.) After Representative Plaintiff Hegazy's work at the food cart ended, Defendants required him to drive their food cart and the cash receipts to their warehouse in Queens. (Hegazy Decl. ¶ 13.) Defendants never paid Representative Plaintiff Hegazy for this time that Defendants required that he work before and after his shifts. (Hegazy Decl. ¶ 16.) Representative Plaintiff Hegazy talked with the other Food Server/Food Vendors with whom he worked and learned that they also were not paid for the time that they were required to work before and after their shifts. (Hegazy Decl. ¶ 17.)

Representative Plaintiff Ramiz Shehatta began his employment with Defendants in or around May 2013 working as Food Server/Food Vendor at Defendants' food cart located at LaGuardia Community College in Queens, New York. (Shehatta Decl. ¶ 3.) Representative Shehatta's employment with Defendants ended when the College shut down because of Covid 19 in March of 2020. (*Id.*) Defendants scheduled Representative Plaintiff Shehatta to work six days per week—5:00 am until 6:00 pm Monday through Friday and 5:00 am until 1:00 pm on Saturdays—for a total of more than seventy hours of work per week. (Shehatta Decl. ¶¶ 5-7.) Although Representative Plaintiff Shehatta worked more than thirty (30) hours of overtime each week, Defendants paid him a flat day rate in cash without any overtime premiums. (Shehatta Decl. ¶¶ 8-11, 13.) On May 25, 2018, Defendants required Representative Plaintiff Shehatta to sign a letter saying that they no longer required his services. (Shehatta Decl. ¶ 12.) After

Representative Plaintiff Shehatta signed the letter, Defendants continued to employ him, but only paid him in cash without any overtime premiums. (Shehatta Decl. ¶¶ 13-14.)

Representative Plaintiff Shehatta worked with a co-worker, another Food Server/Food Vendor, who worked the same hours that he did at Defendants' LaGuardia Community College food cart from 2013 until February of 2018. (Shehatta Decl. ¶ 15.) Working with his co-worker, Representative Plaintiff Shehatta learned that the co-worker was also paid in cash without any overtime. (Shehatta Decl. ¶ 16.) After February of 2018, Defendants transferred the co-worker to one their food carts on 53rd Street in Manhattan. (Shehatta Decl. ¶¶ 17-18.) In Manhattan, the co-worker works six days a week, eight or nine hours a day. (Shehatta Decl. ¶ 18.) Despite the many hours in excess of forty that the co-worker has continued to work, Defendants have continued to pay him cash without any overtime premium. (Shehatta Decl. ¶ 19.)

Although they are not Representatives of the FLSA Collective, Plaintiffs Ahmed Abouelkhair, and Ahmed Abdelmoneim witnessed Defendants scheme to avoid paying FLSA Collective members for all hours worked and overtime for hours worked in excess of forty in a workweek.

Defendants employed Plaintiff Abouelkhair from in or around December of 2010 to work as a Food Server/Food Vendor in their food cart located on 53rd Street by 6th Avenue in Manhattan. (Abouelkhair Decl. ¶¶ 3-4.) In or around March of 2018, Plaintiff Abouelkhair switched to part-time and started working two, or at the most, three days per week. (Abouelkhair Decl. ¶ 7.) On the days that he worked, Defendants scheduled Plaintiff Abouelkhair to work from 9:00 am until 7:00 pm. (Abouelkhair Decl. ¶¶ 8, 12.) Most of the Food Server/Food Vendors with whom Plaintiff Abouelkhair worked were full-time workers who worked in excess of forty (40) hours per week and they were also scheduled to begin work at 9:00 am.

(Abouelkhair Decl. ¶ 9.)  Although Plaintiff Abouelkhair and the Food Server/Food Vendors with whom he worked were scheduled to start work at 9:00 am, Defendants' manager required them to arrive at work early.  (Abouelkhair Decl. ¶ 10.)  Plaintiff Abouelkhair and other Food Server/Food Vendors would start working when the food cart arrived, generally at 8:30 am. (Abouelkhair Decl. ¶¶ 8-9.)  Despite telling the Food Server/Food Vendors to arrive at work early and knowing that they started work before 9:00 am when the food cart arrived, Defendants' manager warned Plaintiff Abouelkhair and the other Food Server/Food Vendors not to clock-in by signing the sign-in sheet before 9:00 am.  (Abouelkhair Decl. ¶¶ 10-11.)

Plaintiff Abouelkhair and the other Food Server/Food Vendors worked long hours without a lunch break or even a bathroom break.  (Abouelkhair Decl. ¶ 14.)  Although Plaintiff Abouelkhair regularly worked twenty-one (21) hours per week and never worked fewer than twenty (20) hours per week, Defendants did not pay him for all the hours that he worked, or even the hours for which he was clocked-in, and regularly paid him for only nineteen hours weekly. (Abouelkhair Decl. ¶ 16.)  Similarly, Defendants did not pay the full-time Food Server/Food Vendors who worked in excess of forty hours each workweek, with whom Plaintiff Abouelkhair worked, for all the hours that they worked.  (Abouelkhair Decl. ¶ 17.)

Defendants hired Plaintiff Ahmed Abdelmoneim to work as a Food Server/Food Vendor in or around October of 2014.  (Abdelmoneim Decl. ¶¶ 3-4.)  After about one year of employment, Defendants added to Plaintiff Abdelmoneim's responsibilities by designating him a trainer.  (Abdelmoneim Decl. ¶ 6.)  Defendants assigned Plaintiff Abdelmoneim to work in each of their restaurant stores—307 East 14th Street and 720 Amsterdam Avenue in Manhattan and 24-08 40th Avenue in Long Island City.  (Abdelmoneim Decl. ¶¶ 7-9.)  Plaintiff Abdelmoneim

also worked at Defendants' food carts.  (Abdelmoneim Decl. ¶¶ 9, 18.)  Plaintiff Abdelmoneim's

employment with Defendants ended in November of 2020.  (Abdelmoneim Decl. ¶ 3.)

While working in Defendants' restaurant stores, Plaintiff Abdelmoneim worked

alongside Food Server/Food Vendors who were paid hourly.  (Abdelmoneim Decl. ¶ 10.)  These

Food Server/Food Vendors who worked in Defendants' restaurant stores regularly worked more

than forty (40) hours each workweek.  (Abdelmoneim Decl. ¶ 12.)  From his experience working

at Defendants' food carts and in all three of Defendants' restaurant stores, Plaintiff

Abdelmoneim saw that the Food Server/Food Vendors in Defendants' restaurant stores

performed the same work as the Food Server/Food Vendors who worked at Defendants' food

carts.  (Abdelmoneim Decl. ¶ 11.)  Although the Food Server/Food Vendors who worked in each

of Defendants' restaurant stores clocked in at the beginning of their shifts and clocked out at the

end their shifts, the managers had the ability to change the times of their punches and not pay

them for all the time that they worked.  (Abdelmoneim Decl. ¶¶ 14-16.)  One time Plaintiff

Abdelmoneim saw a manager at the restaurant store on 14th Street change the clock out time of a

Food Server/Food Vendor to 5:00 pm, although the employee had worked until close to 5:30 pm

and clocked out when he finished work.  (Abdelmoneim Decl. ¶¶ 13-16.)  Plaintiff Abdelmoneim

asked the manager why he had changed the clock-out time.  (Abdelmoneim Decl. ¶-16.)  The

manager replied that he wanted to prevent employees from working slowly to get paid for more

hours.  (*Id.*)

## B.    Defendants Failed to Pay FLSA Collective Members Overtime for All Hours Worked in Excess of Forty in a Workweek

Under the FLSA, an employer must compensate an employee at an overtime rate of at

least one and one half times the employee's regular rate for those hours the employee works in

excess of forty (40) in a workweek.  29 U.S.C. 207(a)(1).  The FLSA permits employers to

8

compensate employees on a daily or other non-hourly basis, "but in such cases the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom." 29 C.F.R. § 778.109.  To establish an FLSA overtime violation, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).

As shown above, Defendants maintained a business practice of intentionally failing to pay the Representative Plaintiffs and the FLSA Collective Plaintiffs all the overtime premiums to which they were legally entitled pursuant to the FLSA—failing to pay some Food Server/Food Vendors overtime—or <u>any</u> wages at all—for some of the hours they worked in excess of forty in a workweek and failing to pay other Food Server/Food Vendors any overtime at all despite their many hours of work in excess of forty (40) in a workweek.  The Representative Plaintiffs and FLSA Collective Plaintiffs are similarly situated because they performed the same job responsibilities and were each the victim of Defendants' scheme to violate the FLSA by not paying all the overtime pay required by law.

### C.    Statute of Limitations

Prior to the filing of this action, the Parties entered into a series of tolling agreements that tolled the statute of limitations for the claims set forth in Plaintiffs' original Complaint (provided in draft form to Defendants' counsel) for Plaintiff Hegazy "and other present and former hourly, non-exempt employees of Defendants who are determined by the Court to be similarly situated." (Harrison Decl. ¶ 3 & Ex. 1; Am. Compl. ¶ 168.)  The agreements tolled the limitations period for a total of 385 days – from February 8, 2021 until February 28, 2022.  (Harrison Decl. ¶ 3 & Ex. 1; Am. Compl. ¶ 169.)   As shown above, Defendants' violations of the FLSA were

intentional and willful and therefore, the statute of limitations should be three years, without the 385 days of tolling.

Plaintiffs filed their Original Complaint in this action on March 4, 2022. (ECF No. 1.) Without the tolling, the FLSA limitations period would begin on March 4, 2019. However, because of the tolling the FLSA limitations period starts on February 12, 2018.

In addition to the tolling agreement, the NYLL statute of limitations for this action was tolled for 299 days during the pendency of a previous class action lawsuit. (Am Compl ¶¶ 165-66.) On April 19, 2018, two Food Server/Food Vendor employees of Defendants, Ahmed Elshamy and Emad Ali, filed a class action complaint in the Southern District of New York against Defendants alleging violations of the FLSA and the NYLL, including failure to pay overtime, failure to pay spread of hours pay and cost of uniforms, illegal deductions from the gratuities that customers intended as tips for employees, and failure to provide notices and wage statements as required by the NYLL section 195(1) and (3). *Elshamy et al. v. The Halal Guys, Inc.*, No. 18-cv-03468 (AT)(GWG). (Am Compl ¶ 165.)

The Parties agreed to settle the case for the original two plaintiffs and four opt-in plaintiffs and the action was discontinued 299 days later on February 12, 2019. (Am Compl ¶ 166.) It is well settled law that "[c]ommencement of a class action tolls the statute of limitations for the claims of all potential members of the class." *In re Payment Card Interchange Fee and Merch.Disc. Antitrust Litig.*, 05-MD-1720 (MKB), 2018 WL 4158290, at *13 (E.D.N.Y. Aug. 30, 2018); see *American Pipe & Const. Co. v. Utah*, 414 U.S. 538,539 (1974) (ruling that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action").

Without any tolling, the six year statute of limitations for the NYLL claims would cause the liability period to start on March 4, 2016. *See* NYLL § 198(3). Because the limitations period for the NYLL claims was tolled for 385 days due to the tolling agreement and an additional 299 days during the pendency of the *Elshamy* action for a total of 684 days, the NYLL liability period begins on April 20, 2014.

## III.    ARGUMENT

The FLSA contemplates the maintenance of collective actions by similarly situated employees. 29 U.S.C. § 216(b). Such collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact" and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 489 (S.D.N.Y. 2009). The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments on claims arising from the same events and brought under the same laws. *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007) ("Collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources.").

"District courts have discretion to facilitate this collective action mechanism by authorizing that notice be sent to potential plaintiffs informing them of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Gaspar v. Personal Touch Moving, Inc.*, No. 13-cv-8187, 2014 WL 4593944, at *4 (S.D.N.Y. Sept. 15, 2014) (Nathan, J.) (quotation marks omitted); *see also Hoffman-La Roche*, 493 U.S. at 170-173 (ruling that timely notice is necessary to afford employees the opportunity to "make informed decisions about

11

whether to participate" and assists the trial court in managing the joinder of potential collective members).  Unlike absent class members in a Fed. R. Civ. P. 23 class action, potential collective members must affirmatively consent (or "opt in") to be covered by the suit.  29 U.S.C. § 216(b).  Unless otherwise tolled, the statute of limitations continues to run on each employee's claim until she files her written consent form with the Court.  29 U.S.C. §§ 255, 256(b).  Time is of the essence because putative Collective members' claims are diminished or extinguished every day.  *Foster v. Food Emporium*, No. 99 CIV 3860 CM, 2000 WL 1737858, at *2 n.1 (S.D.N.Y. Apr. 26, 2000).  Timely distribution of a notice of pendency alerting potential collective members of their right to opt-in an FLSA collective action is thus crucial.

### A.  Legal Standard for Conditional Certification and Court-Authorized Notice

Courts in the Second Circuit engage in a two-step approach when deciding a motion for conditional certification.  *See Hong v. Haiku @ WP Inc.*, No. 19 Civ. 5018, 2022 WL 263575, at *4 (S.D.N.Y., Jan. 28, 2022) (Roman, J.).  "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  At the second stage, following the completion of discovery, a court will "determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."  *Id*.

At the initial stage - which is applicable to the instant motion – "plaintiffs need only make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law."  *Martinenko v. 212 Steakhouse Inc.*, 22-cv-518 (LJL), 2022 WL 1227140, at *2 (S.D.N.Y., Apr. 26, 2022) (Liman, J.) (internal quotation marks

12

and alterations omitted).  "Plaintiffs may satisfy their 'very low' burden by relying on their own

pleadings and affidavits, and even hearsay statements made by other employees."  *Diatta v.*

*Iguana New York, Ltd.*, 2016 WL 2865132, at *3 (S.D.N.Y. May 10, 2016) (Torres, J.); *see also*

*Julian v. MetLife, Inc.*, 298 F. Supp. 3d 699, 702 (S.D.N.Y. 2018) (Nathan, J.) ("The plaintiff

may adduce evidence through its own pleadings, affidavits, and declarations, including any

hearsay statements contained therein.") (internal citation omitted); *Gonzalez v. Hanover Ventures*

*Marketplace LLC*, No. 21-CV-1347, 2022 WL 193004, at *5 (S.D.N.Y., Jan. 21, 2022) (Ramos,

J.) ("courts in this circuit have routinely granted conditional collective certification based solely

on the personal observations of one plaintiff's affidavit") (internal citation omitted); *Salomon v.*

*Adderley Indus.*, 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012) ("courts regularly rely on plaintiffs'

affidavits and hearsay statements in determining the propriety of sending notice.").

### B.     Plaintiffs Have Made The Modest Factual Showing Required For Conditional Certification.

Far exceeding a "modest factual showing," four Plaintiffs have each submitted detailed

declarations demonstrating that the FLSA Collective members were subject to common policies

that violated their rights under the FLSA by depriving them of overtime pay.  Between them, the

four Plaintiffs who submitted declarations worked at all of Defendants' New York City food

carts and restaurant stores during the limitations period.  (Hegazy Decl. ¶ 4 (stating Plaintiff

Hegazy worked the night shift at all four of Defendants' food carts located on 53rd Street in

Manhattan); Shehatta Decl. ¶ 3 (stating Plaintiff Shehatta worked at Defendants' food cart

located at LaGuardia Community College in Queens New York); Abouelkhair Decl. ¶¶ 4, 8

(stating that Plaintiff Abouelkhair worked days at Defendants' food cart located at 53rd Street

and 6th Avenue in Manhattan); Abdelmoneim Decl. ¶¶ 7-9, 18 (stating that Plaintiff

Abdelmoneim worked at all three of Defendants' restaurant stores and also at Defendants' food

carts).) Each of these four Plaintiffs were long-term employees of Defendants and saw

Defendants' pay practices and talked with other Food Server/Food Vendors about their pay. For

example, Plaintiff Ahmed Abdelmoneim saw Defendants' manager intentionally change a Food

Server/Food Vendor's time to avoid paying him for time that he had worked. (Abdelmoneim

Decl. ¶¶ 14-16.) Plaintiff Abdelmoneim was told by other Food Server/Food Vendors that their

manager had also changed their clock-out time. (Abdelmoneim Decl. ¶ 17.) Defendants'

manager required Plaintiff Ahmed Abourelkhair, along with other full-time Food Server/Food

Vendors, to arrive at work early, but warned them against clocking in early when they began

work before their scheduled start time. (Abouelkhair Decl. ¶¶ 8-11.) Likewise, Representative

Plaintiff Hegazy, along with other Food Server/Food Vendors was not paid for the overtime

hours that Defendants required him to work before and after his scheduled shift. (Hegazy Decl.

¶¶ 11-13, 16-17.) Finally, Representative Plaintiff Shehatta and his Food Server/Food Vendor

co-worker were never paid overtime despite working many hours in excess of forty (40) each

workweek. (Shehatta Decl. ¶¶ 8-9, 13, 16, 19.) Thus, Plaintiffs have provided abundant

evidence that they and the FLSA Collective "were subject to [a] common policy or practice and

were 'similarly situated'". Plaintiffs easily satisfy the lenient standard for certification and

notice. *See, e.g., Infantino v. Sealand Contractors Corp*., 2021 WL 4472475, at *14 (W.D.N.Y.,

Sept. 30, 2021) ("plaintiffs' allegations are sufficiently detailed to meet the modest showing

required at this stage of the proceedings to justify conditional certification" where the complaint

and the plaintiff and opt-in plaintiff's declarations were based "upon their own observations and

conversation with other employees."); *Williams v. Movage, Inc.*, No. 17 CIV. 2628 (KPF), 2018

WL 1940435, at *7 (S.D.N.Y. Apr. 24, 2018) (Failla, J.) ("Plaintiffs have cleared the low hurdle

to conditional certification" where the complaint and the two plaintiffs' declarations indicated

14

that the plaintiffs and the proposed collective members worked in similar jobs and where they alleged that they had conversations with other potential opt-in plaintiffs who spoke about how they were missing hours from their pay…); *Diatta v. Iguana New York, Ltd.*, 2016 WL 2865132, at *3 (certifying FLSA collective of "all of Defendants' nonexempt kitchen workers" based on the two plaintiffs' declarations attesting that "they spoke to numerous other kitchen employees… who confirmed that they, like plaintiffs, received a fixed weekly salary without regard to the number of hours they worked in excess of 40 hours per week…"); *Flood v. Just Energy Marketing Corp.*, 2016 WL 354078, at *2 (S.D.N.Y. Jan. 25, 2016) (Torres, J.) (certifying FLSA collective where plaintiff stated that he knew that others similarly situated were subjected to the same practices as he was "based on his personal observations of and discussions with those workers"); *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2014 WL 4593944, at *5 (S.D.N.Y. Sept. 15, 2014) (Nathan, J.) (ruling that plaintiff met standard for certification and notice when his affidavit indicated that he worked overtime for which he was not paid and "heard other employees complain about not being paid overtime wages").

**C.    The Underlying Merits Of The Case Are Immaterial To The Determination Of Conditional Certification And Notice**

Although Plaintiffs have made a robust showing that Defendants failed to pay Plaintiffs and the FLSA Collective the required overtime premiums, an in-depth analysis of the underlying merits is unnecessary and inappropriate at this time.  As Judge Netburn recently explained, at the "first stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations and should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Santiago v. Information Resources Inc*., 20-CV-7688 (AT)(SN), 2022 WL 476091, at *3 (S.D.N.Y., Feb. 16, 2022) (Netburn, MJ.)  *See also Wood v. Mike Bloomberg 2020, Inc.*, 484

F.Supp.3d 151, 157 (S.D.N.Y., Sep. 3, 2020) (Gorenstein, M.J.) ("a court 'should not weigh the merits of the underlying claims' at the conditional approval stage"); *Flood v. Just Energy Marketing Corp.*, 2016 WL 354078 (S.D.N.Y. Jan. 25, 2016) (Torres, J.)( "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at the conditional certification stage.); *Julian*, 298 F. Supp. 3d 699 at 702–03 ("At this initial stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.  Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated"); *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 369–70 (S.D.N.Y. 2014) (Nathan, J.) ("At this early stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations"); *Shajan v. Barolo, Ltd.*, No. 10 CIV. 1385 (CM), 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) (McMahon, J.) ("Weighing of the merits is absolutely inappropriate."); *Lynch v. United Servs. Auto Ass'n,* 491 F.Supp.2d 357, 368 (S.D.N.Y.2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.").  "[T]he question for the Court is not 'whether there has been an actual violation of law but rather . . . whether the proposed plaintiffs are 'similarly situated' . . . with respect to their *allegations* that the law has been violated." *Davis v. Abercrombie & Fitch Co.*, No. 08 Civ. 1859, 2008 WL 4702840, at *10 (S.D.N.Y. Oct 23, 2008) (emphasis in original) (quoting *Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005)).

### D.    The Proposed Notice Of Pendency Is Fair And Adequate

Attached as Exhibit 2 to the Harrison Decl. is Plaintiffs' proposed Notice of Lawsuit (the "Notice").  The Notice explains Plaintiffs' claims, provides clear instructions on how to opt-in to

this action, and accurately states the prohibition against retaliation for participation in an FLSA action.

"[T]he Supreme Court has stated that the details of notice issued pursuant to § 216(b) should be left to the discretion of the district court". *Flood v. Just Energy Marketing Corp.*, 2016 WL 354078 (S.D.N.Y. Jan. 25, 2016) (Torres, J.). "The job of the court is to make sure that notice is timely, accurate, and informative… [and] [c]ourts are guided by the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants." *See also Martinenko v. 212 Steakhouse Inc.*, 22-cv-518 (LJL), 2022 WL 1227140, at *6 (S.D.N.Y., Apr. 26, 2022) (Liman, J.) (internal quotation marks and alterations omitted) (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)("When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and ensure that putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.").

The Notice achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action and should be adopted and sent to all potential opt-ins via first class mail, e-mail, text message, and social media chat (addressed specifically to members of the proposed collective). *See Hong v. Haiku @ WP Inc.,* No. 19 Civ. 5018 (NSR), -- F.Supp.3d --, 2022 WL 263575, at *12 (S.D.N.Y., 2022) (Roman, J.) ("The Court agrees that disseminating the Notice by mail, email, text message, and social media chat (addressed specifically to members of the proposed collective) is appropriate.") (citing cases). *See also Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-3624, 2015 WL 4240985, at *5

(S.D.N.Y. July 13, 2015) (Sullivan, J.) (permitting distribution of notice by text message because "given the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action").

> **E.      Notice Should Be Sent To All Putative Collective Members Who Worked For Defendants On Or After February 12, 2018**

Plaintiffs respectfully request that the Court order the Notice to be sent to all putative Collective members who worked for Defendants on or after February 12, 2018, which is three years prior to the commencement of this lawsuit – Plaintiffs filed their Original Complaint in this action on March 4, 2022 – plus 385 days during which the parties entered into a series of tolling agreements that tolled the statute of limitations for the claims set forth in Plaintiffs' original Complaint (from February 8, 2021 until February 28, 2022).  (*See* Harrison Decl. ¶ 3 & Ex. 1.) The FLSA Collective should be afforded sixty (60) days from the date of mailing to opt-in to this lawsuit.

It is well settled that where plaintiffs have alleged in their complaint that defendants' violations were willful, as is the case here (*see* Am. Compl. ¶¶ 88, 192-193, 199, 210), "notice shall be sent to all potential opt-in plaintiffs who worked for Defendants within three years prior to the commencement of [] suit".  *Flood v. Just Energy Marketing Corp.*, 2016 WL 354078, at *5 (S.D.N.Y. Jan. 25, 2016) (Torres, J.).  *See also Imbarrato v. Banta Management Services, Inc.,* No. 18-cv-5422 (NSR), 2022 WL 1210868, at *5 (S.D.N.Y., 2022)("Where parties dispute the willfulness of the violations, courts typically apply the three-year, rather than two-year, statute of limitation"); *Chen v. Dun Huang Corp.*, 19-CV-11883 (GBD) (BCM), 2021 WL 5234421, at *10 (S.D.N.Y., Nov. 8, 2021) (Moses, MJ) ("in this Circuit, courts routinely calculate the notice period from the date on which the lawsuit was filed").

**F.    Discovery Of Potential Opt-In Plaintiffs' Names And Contact Information Is Proper And Necessary**

In order to provide potential opt-in plaintiffs with notice of the pendency of this lawsuit, Plaintiffs require discovery of the names, last known addresses, last known phone numbers, last known e-mail addresses, last known social media user names, and the dates and location(s) of employment, and position(s) held.  *See Hong v. Haiku @ WP Inc*., 2022 WL 263575, at *9 (S.D.N.Y., 2022) (ordering Defendants to produce "names, dates of employment, positions, last known mailing addresses, last known telephone numbers, last known email addresses, and last known WhatsApp, WeChat and/or Facebook usernames" because "Defendants providing social media usernames can help ensure that notice of the collective action reaches all potential opt-in plaintiffs") (citing cases).  *See also Diatta v. Iguana New York, Ltd.*, 2016 WL 2865132, at *6 (S.D.N.Y. May 10, 2016) (Torres, J.) (citing cases).  This information should be provided in electronic format.  *Id*.

**G.    The Proposed Notice Should Be Posted In Accessible Places At Each Jobsite Where Putative Collective Members Are Likely To See It**

Finally, in order to best facilitate dissemination of the notice of the lawsuit to their employees, Defendants should be required to post copies of the Notice, along with the consent forms, in a place at each jobsite where the FLSA Collective members are likely to see it and learn about their rights related to this lawsuit.  *See Hong* at *12 ("posting the notice at Defendants' physical location is a generally acceptable form of distributing information related to such notices, and is therefore approved.") (citing cases); *Flood v. Just Energy Marketing Corp.*, 2016 WL 354078 (S.D.N.Y. Jan. 25, 2016) (Torres, J.) (courts in this Circuit "routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.") (citing cases).  Accordingly, Defendants

should be required to post copies of the Notice, along with the consent forms, in an accessible place at each jobsite where putative Collective members work throughout the duration of the opt-in period.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion in full.

Dated: May 26, 2022                    HARRISON, HARRISON & ASSOC., LTD.

/s/ David Harrison_____
David Harrison, Esq.
Julie Salwen, Esq.
110 State Highway 35, 2nd Floor
Red Bank, NJ 07701
Telephone: 718-799-9111
Facsimile: 718-799-9171
dharrison@nynjemploymentlaw.com
jsalwen@nynjemploymentlaw.com
*Attorneys for Plaintiffs, proposed FLSA Collective members and the proposed Class Members*

Akerman, LLP
Jeffrey A. Kimmel, Esq.
Genaira L. Tyce, Esq.
1251 Avenue of the Americas
New York, NY 10020
212.880.3800
*Attorneys for Defendants*