```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/27/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AHMED HEGAZY, et al.,

                         Plaintiffs,

-against-

THE HALAL GUYS, INC., et al.,

                         Defendants.

**OPINION AND ORDER ON MOTION TO COMPEL ARBITRATION**

22-CV-01880 (JHR) (KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE.**

      This class and collective action involves claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for unpaid wages. (ECF No. 1 ("Compl.").) Before the Court is Defendants' motion pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., to compel arbitration as to claims brought by eight of the thirty-four Plaintiffs in this case (the "Arbitration Plaintiffs"). (ECF No. 106.) Defendants also seek costs and attorneys' fees incurred in bringing this motion. For the reasons stated below, Defendants' motion to compel arbitration as to the Arbitration Plaintiffs is granted and its request for attorneys' fees is denied.

## BACKGROUND

      Plaintiffs are food servers and food-cart workers who were employed by Defendants and worked in their restaurants and food trucks. Plaintiffs assert, inter alia, that they were not paid the appropriate overtime rate for work in excess of forty hours per week; they were not permitted to keep gratuities they received from customers; they were regularly scheduled to work shifts of more than 10 hours; they were required to purchase their own uniforms; and they were not provided appropriate wage statements.

1

On January 13, 2021, prior to initiating this action, Plaintiffs' counsel sent Defense counsel a draft complaint.  (ECF No. 120 ("Opp.") at 2.)  The parties then entered into a series of agreements that tolled the statute of limitations for Plaintiffs' claims to allow time for the parties to discuss settlement.  (*Id.*)  Over the next few months, the parties scheduled two mediations, both of which were cancelled by Defendants, and the parties did not reach a settlement agreement.  (*Id.* at 3.)  The tolling agreements expired on February 28, 2022.  (*Id.*)

Beginning in January 2022, shortly before the tolling agreements expired, Defendants began to distribute a new employee handbook ("Employee Handbook") to its employees.  (ECF No. 108 ("Hochong Decl.") ¶ 2.)   The Employee Handbook begins by stating, "This Handbook was developed to describe and outline some of the expectations we have of our employees as well as to outline the policies, programs and benefits available to eligible employees."  (ECF No. 121 ("Salwen Decl."), Ex. B at 5.)  The Employee Handbook further provides that the handbook is "designed to … provide you with information about working conditions, employee benefits and some of the policies affecting your employment."  (*Id.* at 6.)  The handbook cautions employees that they "should read and understand the provisions of this Handbook."  (*Id.*)  It goes on to state in bold letters, "THIS HANDBOOK IS NOT A CONTRACT OF EMPLOYMENT." (*Id.*)

The Employee Handbook also includes an arbitration agreement and class action waiver ("Arbitration Agreement").  (*Id.*) Specifically, Section VII of the Employee Handbook is titled "ARBITRATION AGREEMENT / CLASS ACTION WAIVER," and provides:

> [B]y their signatures below, Employees and the Company agree that any controversy, dispute, or claim arising out of Employee's employment with the Company (including any of the Company's parent, subsidiaries, affiliates or related corporations ... ), whether contractual, in tort, or based upon statute, shall be exclusively decided by binding arbitration held pursuant to the [FAA], and shall be

2

administered by an arbitration forum as agreed by the Employee and the Company.

(*Id.* at 43.)  The Arbitration Agreement further provides that "the parties to arbitration shall each be responsible for and shall pay one half (1/2) of the fees, costs, and expenses charged by the arbitration administrative agency and the arbitrator." (*Id.*)  It also provides that "[t]o the extent permitted by applicable law, arbitration must be initiated within one (1) year from the date any claim or dispute arose or arises or such claim shall forever be waived …." (*Id.*)

Following the Arbitration Agreement is a separate acknowledgement form ("Acknowledgment Form"), which states, "I acknowledge that I have received The Halal Guys' Arbitration Agreement / Class Action Waiver contained in The Halal Guys' Employee Handbook. I understand that it is my responsibility to be familiar with and conform to the procedures contained in this policy." (*Id.* at 48.)

On March 4, 2022, after the expiration of the tolling agreement, six individual Plaintiffs filed the Complaint in this action.  On August 15, 2022, five individuals filed consents to become party Plaintiffs in this action.[1]  On September 2, 2022, the Honorable Lorna G. Schofield granted a conditional, collective certification for individuals who worked for Defendants "as full-time, non-exempt Food Server/Food Vendors at Defendants' food carts and restaurant stores in New York City" during the relevant period.  (ECF No. 62.)  Judge Schofield granted approval for Plaintiffs' counsel to file notices advising employees of this lawsuit in a common space operated by Defendants and to disseminate the notice by text, email, and social media. (*Id.* at 9.)

---

[1] The original Plaintiffs are Ahmed Hegazy, Shrief Sror, Ramiz Shehatta, Walid Soltan, Ahmed Abouelkhair, and Ahmed Abdelmoneim.  The individuals who consented to be party Plaintiffs on August 15 are Hossam Ahmed, Islam Soliman, Hassan Elganzouri, Naser Dakhly and Mohamed Ahmdein.  None of these individuals signed the Arbitration Agreement.

Numerous individuals then filed consents to become party Plaintiffs, and there are now thirty-four Plaintiffs in this action. (ECF Nos. 71, 75-77, 83.)

Eight of those individuals who filed consents to become party Plaintiffs also signed the Arbitration Agreement and Acknowledgment Form prior to joining this lawsuit.[2] (Hochong Decl. ¶ 6.) These eight individuals, i.e., the "Arbitration Plaintiffs" are: Mohamed Eshiba, Ahmed Elbohy, Mahmoud Elnahtawy, Allen Eti, Moustapha Fall, Mahmoud Elnagar, Mahmoud Elganzoury, and Ndeye Soukeye Thiam. Four of the Arbitration Plaintiffs — Elbohy, Elnahtawy, Eshiba, and Thiam — signed the Arbitration Agreement and Acknowledgment Form by February 2022, before the Complaint was filed. (Hochong Decl. Ex. B.)[3] The remaining four Arbitration Plaintiffs —Eti, Fall, Elnagar and Elganzoury —signed the Arbitration Agreement and Acknowledgment Form after the Complaint was filed. (Opp. at 7.) Eti signed the forms on March 11, 2022; Elganzoury signed on April 29, 2022; Fall signed on May 13, 2022; and Elnagar signed on October 6, 2022.[4] All of the Arbitration Plaintiffs signed consents to become party Plaintiffs between October and December 2022. (ECF Nos. 71, 75).

Elnagar and Elganzoury submitted declarations stating they only received the Employee Handbook after March 4, 2022, because they worked sporadically for Defendants prior to that time and were not employed by Defendants in January or February 2022 during the rollout of

---

[2] The remaining 26 Plaintiffs did not sign the Arbitration Agreement because they were no longer employed by Defendants when the Employee Handbook was rolled out. (Opp. 2.)

[3] It is unclear exactly when Thiam signed the forms. Thiam's forms appear to be dated November 12, 2021, two months before the Arbitration Agreement was rolled out. Plaintiffs do not question the validity of Thiam's signature and do not contest that he signed the form before the complaint was filed. Accordingly, the Court assumes that Thiam signed the Arbitration Agreement before the complaint was filed, either on November 12, 2021 or in January or February, 2022.

[4] Elnagar's Acknowledgment Form is dated 6/10/2022, but Elnagar's declaration states that he signed the form on October 6, 2022 (i.e., what Americans would typically write as 10/6/2022). (ECF No. 150-2.)

4

the Employee Handbook. (ECF Nos. 150-1, 150-2.) Each declared that when they received the Employee Handbook, they were unaware of this lawsuit and Defendants did not inform them of the lawsuit. (*Id.*) Plaintiffs did not submit declarations or other evidence with regard to when Eti or Fall received the Employee Handbook.

On March 31, 2023, Defendants filed the instant motion to compel arbitration, arguing that because the Arbitration Plaintiffs signed the Arbitration Agreement, they are precluded from joining the class action as plaintiffs. Plaintiffs oppose the motion, arguing that the Employee Handbook explicitly states that it does not form a contract, and therefore the Arbitration Agreement within the Employee Handbook is not contractually binding. Plaintiffs argue in the alternative that the terms of the Arbitration Agreement and the manner in which it was rolled out were unconscionable, and thus any contract that was created is unenforceable.

## LEGAL STANDARD

Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When deciding a motion to compel arbitration, courts apply a similar standard to summary judgement and consider "all relevant, admissible evidence submitted by the parties," drawing "all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017).

The U.S. Supreme Court has made clear that "the FAA was designed to promote arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (quotation marks and citation omitted), and courts must "'rigorously enforce' arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation

omitted). Still, "despite the strong federal policy favoring arbitration, arbitration remains a creature of contract." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). As a result, "before an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties." *Meyer*, 868 F.3d at 73. This question is governed by state law principles of contract formation. *Starke*, 913 F.3d at 288. The party moving to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010).

Once the court has determined that an agreement to arbitrate exists, the burden then rests on the party opposing the motion to demonstrate that the agreement is invalid or unenforceable, or that the agreement does not encompass its claims. *Aminoff & Co. LLC v. Parcel Pro, Inc.*, 2022 WL 987665, at *3 (S.D.N.Y. Apr. 1, 2022). These issues are also governed by state law. Under New York law, a contract that is "grossly unreasonable or unconscionable" may be found unenforceable. *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988).

**APPLICATION**

1. **Formation of Agreement to Arbitrate**

Under New York Law, the "touchstone of contract" is "[m]utual manifestation of assent." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002) (citation omitted). A person who signs a written contract is "conclusively presumed to know its contents and to assent to them." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (citing *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (1920)).

There is no dispute that the Arbitration Plaintiffs were presented with and signed an Employee Handbook that contained within it a written Arbitration Agreement, which stated in pertinent part:

> [B]y their signatures below, Employees and the Company agree that any controversy, dispute, or claim arising out of Employee's employment with the Company ... whether contractual, in tort, or based upon statute, shall be exclusively decided by binding arbitration held pursuant to the Federal Arbitration Act ("FAA").

(Salwen Decl., Ex. B). It is also undisputed that each Arbitration Plaintiff signed and dated separate Acknowledgement Forms, acknowledging that they received the "Arbitration Agreement / Class Action Waiver contained in The Halal Guys' Employee Handbook," and that it is their "responsibility to be familiar with and conform to the procedures contained in this policy." (*Id*.) Thus, Defendants have made a prima facie showing that the parties created a contract in which they agreed to arbitrate claims arising out of the employee's employment.

However, Plaintiffs argue that no agreement to arbitrate existed because the Employee Handbook included language disclaiming the formation of a contract. This argument is unavailing. When an arbitration agreement is included in an employee handbook with language providing that the handbook does not constitute a contract, such an arbitration agreement is enforceable when: (1) the language of the arbitration agreement is distinct and mandatory, and (2) the employee is advised of the policy and understands that compliance with it is a condition of employment. *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 77 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 40 (2d Cir. 2016). Both elements are met here.

To start, the Arbitration Agreement is distinct from other sections of the Employee Handbook because it is contained in its own section labelled "SECTION VII: ARBITRATION

7

AGREEMENT / CLASS ACTION WAIVER." (Salwen Decl. Ex. B.) Moreover, the Arbitration Agreement repeatedly states that "Employees and the Company agree" and uses language such as "must," "shall," and "will," which creates a mandatory, not optional, set of rules that the employee and employer must follow. The Acknowledgment Form similarly requires employees to agree to "conform to the procedures contained in this policy." (*Id.*) Courts have "routinely upheld arbitration agreements contained in employee handbooks where [ ] the employee has signed an acknowledgment form." *Gil v. Bensusan*, 2019 WL 12334706, at *3 (S.D.N.Y. Oct. 30, 2019) (collecting cases).

Moreover, it is apparent that the Arbitration Plaintiffs were advised and understood that compliance with the policy was a condition of employment. Specifically, the Employee Handbook states that it provides information about the employer's "policies" and "working conditions." (*Id.*) The Employee Handbook also makes clear that Defendants would notify employees of any changes to employment policies that may occur, and neither party alleges that the Employee Handbook was altered or changed. Unlike other provisions of the Employee Handbook, the Arbitration Agreement also includes mutual language that both the employer and employee agree to the same policy. Additionally, the Acknowledgement Form states that the signatories understand that it is their "responsibility to be familiar with *and conform* to the procedures contained in this policy." (*Id.*(emphasis added).) Similar language has been found sufficient to put an employee on notice that a handbook included terms that were conditions of employment. *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 2022 WL 900713, at *4 (E.D.N.Y. Mar. 28, 2022), *vacated on other grounds*, 2023 WL 2740846 (E.D.N.Y. Mar. 31, 2023) (finding it

8

significant that the offer letter stated that the plaintiff "agree[d] to be subject to the policies and practices" in the employee handbook").

Several Arbitration Plaintiffs also submitted affidavits suggesting that they understood that they "had" to sign the various forms to stay employed. (*See* ECF No. 116 ("Elnahtawy Decl.") ¶ 8; ECF No. 117 ("Elbohy Decl.") ¶ 7; ECF No. 119 ("Eshiba Decl.") ¶ 7.) Although Plaintiffs argue that the Arbitration Plaintiffs were never told explicitly that signing the Arbitration Agreement was a "condition of employment," no such magic words are required. Rather, it is apparent from the Arbitration Plaintiffs' own declarations that they understood that they needed to sign the Arbitration Agreements as a condition of employment.

Additionally, after signing the Arbitration Agreement and Acknowledgment Form, the Arbitration Plaintiffs continued working for Defendants. An employee generally can be "deemed to have accepted" an arbitration policy by continuing to work after being advised of his or her "responsibility to read and understand all of the company policies including the arbitration policy." *Brown v. St. Paul Travelers Cos., Inc.*, 331 F. App'x 68, 69 (2d Cir. 2009) (quotation marks and citation omitted).

Accordingly, I find that an agreement to arbitrate exists between the Arbitration Plaintiffs and Defendants.

### 2. Enforceability of the Arbitration Agreement

Under New York law, "[a]n unconscionable contract has been defined as one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman*, 73 N.Y.2d at 10. "A determination of unconscionability generally requires a showing that the contract was both

procedurally and substantively unconscionable when made — i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* (quotation marks omitted). Procedural unconscionability focuses on "contract formation process" and whether there was "lack of meaningful choice." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121-22 (2d Cir. 2010). Substantive unconscionability addresses the "content of the contract" and whether there are terms that "are unreasonably favorable to the other party." *Id.* at 122. In "exceptional cases," a provision of a contract can be "so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Gillman*, 73 N.Y.2d at 12.

Plaintiffs argue that the Arbitration Agreements are invalid and unenforceable because they are both procedurally and substantively unconscionable.[5]

### a. Procedural Unconscionability

Plaintiffs contend that the rollout of the Arbitration Agreement was procedurally unconscionable because when Defendants provided the Employee Handbook to employees, they failed to disclose the instant litigation and also gave employees insufficient time to read the Arbitration provision. (Opp. 7.) Thus, Plaintiffs argue, Defendants coerced the Arbitration Plaintiffs into signing the Arbitration Agreements while fraudulently concealing that they would lose their rights to join this lawsuit if they signed them.

"A court may find unconscionability where a non-drafting party has no way of knowing a material fact." *OConner v. Agilant Sols., Inc.,* 444 F. Supp 3d 593, 603 (S.D.N.Y. 2020) (*quoting*

---

[5] There is no dispute here that the Arbitration Agreement – if valid and enforceable – encompasses the instant wage and hour claims. Therefore, the Court does not address the scope of the Arbitration Agreement.

*In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 251 (S.D.N.Y. 2005)) (finding that defendants' failure to advise their employees of their rights as putative class members, coupled with improper coercion of employees to sign the agreements, was unconscionable). However, "there is no statutory rule or case law that *requires* defense counsel to give specific information and instructions to putative class members, nor are there any 'magic words' that must be disclosed in communications" in connection with the rollout of the arbitration agreement. *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 268 (S.D.N.Y. 2020), *objections overruled*, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021) (cleaned up and citation omitted) (compelling arbitration notwithstanding the failure of the moving party to disclose the pending class action when providing the arbitration agreement to putative class members).

Here, unlike in *OConner* or *Chen-Oster*, the Arbitration Agreement was rolled out before the Complaint was filed, and before this litigation became pending and before any conditional class was certified. These facts strongly cut against any finding that it was unconscionable for Defendants not to inform their employees of any future right in a litigation that had not yet been initiated. As to the individuals who were provided the Arbitration Agreement *after* the Complaint was filed, the omission by Defendants of any reference to the then-pending litigation is more concerning.

However, this concern is tempered by the fact that the Arbitration Agreement clearly advised that employees who signed the agreement waived their rights to bring a class action lawsuit. The Employee Handbook also advised employees to "read and understand" the document, and the Acknowledgment Form required the Arbitration Plaintiffs to acknowledge that it is their responsibility to be familiar with and conform to the "Arbitration Agreement /

11

Class Action Waiver." Such clear language in the contract "significantly militates against finding the agreements to be procedurally unconscionable." *Lawrence v. NYC Med. Prac., P.C.*, 2023 WL 4706126, at *11 (S.D.N.Y. July 21, 2023) (finding that "the fact that the arbitration agreements were signed after this litigation began and did not call out the existence of this case is insufficient to show that . . . the agreements are procedurally unconscionable").[6]

Thus, the fact that Defendants did not advise the Arbitration Plaintiffs about the instant litigation during the rollout of the Arbitration Agreement is insufficient to render the agreements procedurally unconscionable.

Additionally, although Plaintiffs argue in their opposition brief that the Arbitration Plaintiffs were given no more than five minutes to read and sign the Arbitration Agreements, the evidence in the record does not support a finding that Defendants forced the Arbitration Plaintiffs to sign the agreements in a hurry. Indeed, the Arbitration Plaintiffs submitted affidavits suggesting that, to the extent they signed the Arbitration Agreements in a hurry, this was due to their own desire to get back to work, and not because they were forced to do so by Defendants. For example, in his declaration, Elbohy stated: "We could only spend a minute or two signing because we had to hurry back to work." (Elbohy Decl. ¶¶ 6-7.) Similarly, Eshiba stated in his declaration, "Because of the pressure of work we only had two or three minutes in which to sign." (Eshiba Decl. ¶ 7.) Plaintiffs do not point to any high-pressure tactics that were employed by Defendants to coerce Plaintiffs into hurriedly signing the Arbitration Agreements.

---

[6] Moreover, Elnagar signed the Agreement in October, after notice of the instant litigation had been posted. Thus, this Plaintiff had other means of learning of the litigation. *Cf. Currency Conversion*, 361 F. Supp.2d at 251 ("There was no reasonable manner for cardholders to know that by failing to reject the arbitration clause, they were forfeiting their rights as potential plaintiffs in th[e] litigation.").

12

They also do not allege that they requested and were denied more time in which to review the forms. By contrast, Defendant's Director of Human Resources, Joanne Hochong, testified at her deposition that all employees were given ample time to review and sign the Arbitration Agreements and that Defendants offered the employees the use of a translator to explain the documents should they request one. (Salwen Decl., Ex. A ("HoChong Dep.") 94-104.)

Thus, Plaintiffs have not met their burden to show procedural unconscionability.

### b. Substantive Unconscionability

Plaintiffs contend that the Arbitration Agreement is substantively unconscionable because it requires the Arbitration Plaintiffs to pay half the costs of arbitration and because it shortens the statute of limitations for Plaintiffs' claims to one year. In their Reply, Defendants stated they "will agree" to waive the one-year statute of limitations for the FLSA claims, but not for any of the NYLL claims.

As to the cost-splitting provision, "New York courts have rejected the idea that cost-splitting between parties is *per se* unconscionable, instead holding that 'the issue of a litigant's financial ability is to be resolved on a case-by-case basis.'" *Am. Fam. Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) (*citing Brady v. Williams Capital Grp., L.P.*, 928 N.E.2d 383, 387-88 (2010)) (finding the cost-splitting provision was not unconscionable where the party opposing the motion to compel arbitration failed to set forth any evidence of its financial inability to pursue arbitration under the terms of the agreement). It is the non-movant's burden to make a "particularized showing" as to what fees might reasonably be imposed and to prove his or her inability to pay those fees. *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 293-94 (S.D.N.Y. 2002).

Here, Plaintiffs have not demonstrated that splitting arbitration fees with Defendants would preclude them from pursuing their rights in the arbitral forum. Instead of providing financial records or other evidence of inability to pay, Plaintiffs assert in a conclusory fashion that they are not be able to afford arbitration costs. (Opp. at 4.) In any event, the Arbitration Agreement provides that Defendants will cover the cost of arbitration if the employee submits financial records at the time of filing the arbitration claim that confirm the employee is unable to pay one half of the arbitrator's fees. (Salwen Decl., Ex. B at 43-44.) This ensures that the fee-splitting provision will not be prohibitively costly for any employee.

As to the statute of limitations provision, Plaintiffs argue that the NYLL and FLSA are remedial statutes with a six-year and a two or three-year statute of limitations, respectively. Therefore, Plaintiffs argue that shortening the statute of limitations for the Arbitration Plaintiffs' claims to one year is substantively unconscionable.

As an initial matter, Defendants have agreed to waive the statute of limitations provision as to Plaintiffs' FLSA claims. (Reply 8 n.9.) "New York courts have accepted offers by parties to waive the enforcement of certain provisions of arbitration agreements, and have evaluated those agreements as modified by the parties' after-the-fact waivers." *Ragone*, 595 F.3d at 124 (citation omitted). "Because unconscionability is an equitable defense to the enforcement of harsh or unreasonable contract terms, a party cannot complain when the defendant through its waivers declines to enforce any potentially unconscionable term." *Id.* (declining to reach the issue of whether an arbitration agreement that appeared to shorten the statute of limitations for a federal statutory claim was void under the FAA because the employer had opted to waive the provision). Thus, the Court accepts Defendants' offer to

waive the one-year contractual limitations period for the FLSA claims and evaluates the Arbitration Agreement as applying the one-year limitations period to the NYLL claims only.[7]

With that in mind, Plaintiffs' argument that the Arbitration Agreement is unconscionable because it shortens the limitations period to bring a NYLL claim is unavailing. New York courts routinely enforce contract provisions shortening the limitations period for bringing any claim against a party where the "shortened statute of limitations ... is reasonable and agreed to by contract." *Wechsler v. HSBC Bank USA, N.A.*, 2016 WL 1688012, at *2 (S.D.N.Y. Apr. 26, 2016) (quotation marks omitted), *aff'd*, 674 F. App'x 73 (2d Cir. 2017). Indeed, "New York courts have held that a six-month period to bring an employment claim is inherently reasonable." *Ortegas v. G4S Secure Sols. (USA) Inc.*, 65 N.Y.S.3d 693 (1st Dep't 2017); *see also Keller v. About, Inc.*, 2021 WL 1783522, at *3 (S.D.N.Y. May 5, 2021) (rejecting the plaintiff's argument that the arbitration agreement was unconscionable to the extent it shortened the applicable limitations period for claims brought pursuant to the New York State Human Rights Law and New York State Pay Equity Act); *Vega v. Fed. Exp. Corp.*, 2011 WL 4494751, at *6 (S.D.N.Y. Sept. 29, 2011) (collecting cases upholding a shortened limitations period of six months for employment-related claims).

---

[7] The Second Circuit has not decided whether an arbitration provision that shortens the limitations period to bring FLSA claims is enforceable, but courts in this Circuit and elsewhere have found that such provisions are *not* enforceable. *See, e.g.*, *Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 299 (E.D.N.Y. 2018) (severing from the arbitration agreement a provision that would shorten the limitations period to bring FLSA claims because the FLSA is a "uniquely protective statute" designed to "remedy the disparate bargaining power between employers and employees," and thus it would "nullify the purposes" of the FLSA to permit employees to contractually abridge their rights under the FLSA); *McLaughlin v. Advanced Commc'ns, Inc.*, 2010 WL 11626961, at *4 (E.D.N.Y. Mar. 25, 2010), *report and recommendation adopted*, 2010 WL 11626962 (E.D.N.Y. Apr. 15, 2010) (finding arbitration agreement substantively unconscionable where it purported to shorten the limitations period to bring a claim under the FLSA).

Accordingly, the provision shortening the statute of limitations for NYLL claims is not unconscionable, and is certainly not "so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Gillman*, 73 N.Y.2d at 12.[8]

### 3. Whether to Stay the Arbitration Plaintiffs' Claims

When a stay is not requested, or where not all claims are referred to arbitration, the court has discretion in determining whether to stay or dismiss the case pending arbitration. *Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015). In considering whether a stay is appropriate, courts consider factors "such as the desirability of avoiding piecemeal litigation," whether "the cases necessitate duplication of discovery or issue resolution," and whether there is "factual overlap between the remaining claims and the arbitrated claims." *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110-11 (S.D.N.Y. 2017). A stay is "particularly appropriate" where it "promote[s] judicial economy, avoidance of confusion and possible inconsistent results." *Birmingham Assocs. Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008).

While the parties do not address whether the Arbitration Plaintiffs' claims should be stayed or dismissed, I find it appropriate to stay those claims. *See Lawrence*, 2023 WL 4706126, at *17 (staying claims of class members who were excluded from a class action because of arbitration agreements); *Chen-Oster*, 449 F. Supp. 3d at 274 (same). However, there is no need to stay this

---

[8] At oral argument, Plaintiffs' counsel argued that even if Plaintiffs failed to show either procedural or substantive unconscionability, the Court should look at the "totality of both the procedural and substantive issues" and find that, when all of the factors are added together, the Arbitration Agreement is unconscionable. (ECF No. 151 at 22, 32.) Plaintiffs did not cite case law supporting the proposition that even if they failed to meet either prong, the Court could nonetheless find the agreement unenforceable based on the cumulative weight of their arguments as to each prong. In any event, Plaintiffs have failed to show unconscionability even when considering all of their arguments as to unconscionability together as a whole.

case as to those Plaintiffs who did not sign the Arbitration Agreement, as those claims can move forward in the instant litigation. *See id.*

4. **Attorneys' Fees**

"[A] court may assess attorneys' fees ... when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975). Here, Defendants request an award of fees incurred in bringing this motion based on the argument that Plaintiffs had "no colorable basis for opposing this motion to compel arbitration." This request is denied. Although Plaintiffs' arguments were ultimately unavailing, Plaintiffs raised several colorable arguments in opposition to Defendants' motion and cited to valid case law in support of their arguments. Indeed, Plaintiffs even obtained a concession by Defendants in the reply brief to waive the Arbitration Agreement's statute of limitations as to Plaintiffs' FLSA claims. There is no evidence that these arguments were brought in bad faith or for oppressive reasons.

Thus, Defendants' request for attorneys' fees is denied. *See Philippe v. Red Lobster Restaurants LLC*, 2015 WL 4617247, at *5 (S.D.N.Y. Aug. 3, 2015) (granting motion to compel arbitration but denying motion for attorneys' fees where the non-movant's arguments "although unpersuasive, [were] not so outrageous as to permit the Court to seriously entertain such a motion").

## CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration for the Arbitration Plaintiffs is GRANTED. Mohamed Eshiba, Ahmed Elbohy, Mahmoud Elnahtawy, Allen Eti, Moustapha Fall, Mahmoud Elnagar, Mahmoud Elganzoury, and Ndeye Soukeye Thiam

are excluded from the class and collective action, and their claims are stayed pending arbitration. Plaintiffs' counsel should promptly file the claims of the Arbitration Plaintiffs in the appropriate arbitration form, together with any documents demonstrating financial hardship so that a determination can be made as to who bears the costs of the arbitration. The parties shall keep this Court updated on the status of the arbitrations by filing status reports every three months. The motion for attorneys' fees is denied. **The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 106.**

    SO ORDERED.

Dated: December 27, 2023             _Katharine H. Parker_
     New York, NY                      KATHARINE H. PARKER,
                                                       United States Magistrate Judge