```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/4/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AHMED HEGAZY, et al.,

                                          Plaintiffs,

           -against-

THE HALAL GUYS, INC., et al.,

                                          Defendants.
-----------------------------------------------------------------X

22-CV-1880 (LAP) (KHP)

**ORDER**

**KATHARINE H. PARKER, United States Magistrate Judge:**

       The parties in this case have submitted their settlement with thirteen of the Plaintiffs in this matter for approval, as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).[1] In *Cheeks*, the Second Circuit held that stipulated dismissals settling claims under the Fair Labor Standards Act ("FLSA") with prejudice require approval of the court. The rationale for this requirement is to mitigate the risk of employer overreach and circumvention of the FLSA through settlements that are cheaper than compliance with the wage law. The court further cited the underlying purpose of the FLSA -- to ensure a "fair day's pay for a fair day's work" – as further support for the holding. *Id*. (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

       In *Wolinsky v. Scholastic Inc.,* 900 F. Supp.2d 332 (S.D.N.Y. 2012), the court outlined five factors to consider in evaluating whether to approve an FLSA settlement: (1) "the plaintiff's range of possible recovery," (2) "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses," (3) "the seriousness of the litigation risks faced by the parties," (4) "whether the settlement

---

[1] Fourteen Plaintiffs remain in this action.

agreement is the product of arm's-length bargaining between experienced counsel," and (5) "the possibility of fraud or collusion." 900 F.Supp.2d at 335 (citations and internal quotation marks omitted). Courts in this District have since followed these factors when evaluating settlements under *Cheeks*.

The settlement agreement in this case contains some provisions that this Court viewed as potentially running afoul of *Cheeks* and the spirit of the FLSA as interpreted by the Second Circuit and courts in this District. In particular, the following provisions are of concern:

- A provision prohibiting Plaintiffs from contacting the press or media to disseminate information about their claims in this litigation or the settlement agreement but allows Plaintiffs to make "truthful statements" to third parties (which the Court interprets to mean third parties so long as they are not made through social media or to the press);
- A provision that prohibits Plaintiffs from disclosing or discussing the financial terms of the settlement except with their attorneys, accountants and immediate family members; and
- A provision that requires Plaintiffs to forfeit 50% of their respective settlement payments (which represent 16% of the claimed damages in this litigation).[2]

This Court therefore invited the parties to submit case authority supporting the inclusion of these provisions in the settlement agreement. Defendants cited only a few cases, some with no analysis and only one with analysis, *Thomas v. AAM Holding Corp.*, 22 Civ. 3110, 2024 WL 4285847 (S.D.N.Y. Sept. 2024). Plaintiffs, citing no cases, stated that they do not object to elimination of the above provisions. This Court does not consider the decisions that contain no analysis to be persuasive authority. And *Thomas* is distinguishable or otherwise not persuasive, as discussed below.

---

[2] Each of the settling Plaintiffs is receiving anywhere from $5,000 to $18,000 in settlement, depending on their years of service and hours worked. Courts in this District have approved settlements providing for recoveries as low as 12% of potential damages, but this is on the low-end of what is considered reasonable. *Gomez v. 38th Street Café LLC*, 2025 WL 871645, at *2 (S.D.N.Y. 2025).

The Second Circuit in *Cheeks* specifically highlighted restrictive confidentiality provisions in settlement agreements as being "in strong tension with the remedial purpose of the FLSA," endorsing and quoting from the holding in *Lopez v. Nights of Cabiria*, 96 F. Supp.3d 170, 178 (S.D.N.Y. Mar. 30, 2015), which rejected a FLSA settlement that contained confidentiality provisions.  The court in *Nights of Cabiria* cited several reasons for rejecting confidentiality provisions in settlements, including that (1) FLSA settlements submitted to the court are judicial documents to which a right of public access applies and (2) the public has an interest in ensuring fair wages and ensuring that all workers are aware of their rights.  The court also rejected portions of a settlement that precluded the plaintiff from disparaging or making negative statements about the defendant employer absent a carve-out for making truthful statements about the litigation, prohibiting the plaintiff from discussing their experiences litigating the wage case, limiting plaintiff's ability to respond to inquiries about the settlement, and imposing liquidated damages for a breach of these provisions, finding them all to be contrary to public policy and the purposes of the FLSA.  Id. at 178.  The court noted that the concerns are heightened when the settlement involves a worker who may be poorly educated and non-English speaking who may be vulnerable to workplace exploitation.  *Id*. at 178-79.  The court stated that "the best way for a worker to learn about his or her employment rights is directly or indirectly from a co-worker or an outside organization.  Yet non-disclosure provisions prevent workers "from using a win to publicize both the wrongdoing of the employer and the possibility of success more generally."  *Id*. (quoting *Silent Workers*, 34 BERKELEY J. EMP. & LAB. L at 143).  Also notable for purposes of the settlement agreement at issue here, the court criticized any breach provision in a settlement that would transfer to the wronged employee a

3

duty to pay a portion of the wage settlement in liquidated damages – stating that such a provision has "the insalubrious effect of threatening to penalize an FLSA plaintiff who discusses his or her efforts to enforce statutory rights to fair pay." *Id*. at 180.

Defendants cite a recent case in this District upholding a no-publicity provision in an FLSA settlement prohibiting the plaintiff from publicizing their individual claims in the case. *Thomas v. AAM Holding Corp.*, 22 Civ. 3110, 2024 WL 4285847 (S.D.N.Y. Sept. 2024). In that case, the court approved the provision because it contained a carve-out for truthful statements and did not prevent the plaintiff from discussing the settlement or the case with third parties. *See also Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223 (S.D.N.Y. Feb. 3, 2016) (noting no per se bar on confidentiality provisions in settlements; approving provision in agreement that plaintiff "will not contact media or utilize any social media regarding" the settlement). These cases draw a distinction between discussing a settlement and litigation on social media and with the media as opposed to discussing these subjects with third parties generally, such as with other co-workers and former co-workers. But, they did not address the public interest in ensuring fair wages and ensuring that all workers are aware of their rights and the methods by which other workers can become aware of their rights. Nor did they discuss holdings in other courts in this District that have refused to approve confidentiality provisions absent a particularized showing of need for such a provision in a given case. *See Rubenstein v. Wings Media, LLC*, 23-Civ-6189, 2024 WL 5247761, at *1-2 (S.D.N.Y. Dec. 30, 2024). This Court is persuaded by the cases following *Nights of Cabiria's* rationale that have refused to enforce confidentiality provisions that restrict plaintiffs from publicizing cases, particularly insofar as the

4

Second Circuit in *Cheeks* took a dim view of confidentiality provisions, and where the parties have not made a particularized showing of need for confidentiality. See 796 F.3d at 206.

Defendants cite no cases approving a liquidated damages provision similar to the one included in this agreement requiring Plaintiffs to forfeit fifty percent of their negotiated wage settlement.  Nor do the cases they cite explain any rationale for precluding Plaintiffs from speaking publicly about information filed on the public docket (i.e., the settlement agreement in this matter and all filings in this matter).

The settlement agreement contains a severability clause that allows for the possibility of the Court finding certain provisions of the agreement "illegal, void, unenforceable or in conflict with any state, federal or any other applicable law," and striking of such provisions but provides that the remainder of the agreement will remain in full force an effect.  In accordance with this provision, the Court does not approve and strikes: (1) all of paragraph 5 except insofar as it prohibits the parties from making false and defamatory statements about each other and permits Plaintiffs to make truthful statements about their claims in this litigation and experience with the litigation to third parties; and (2) the last sentence of paragraph 6 that purports to require Plaintiffs to forfeit fifty percent of their settlement amounts in the event of a material breach of the agreement.

The remainder of the agreement is fair and reasonable in accordance with the *Wolinsky* factors insofar as it was the result of arms-length negotiation before an experienced mediator and provides Plaintiffs with a settlement of their disputed wage claims that falls within the range found reasonable by courts in this District.  The Court also finds that the portion of the settlement allocated for attorneys' fees – 33% – is within the range found by courts in this

District to be reasonable.  *See, e.g., Fernandez v. Masterypro Grp.,* 18-Civ-4540, 2019 WL 4412804, at *3 (S.D.N.Y. Sept. 16, 2019).  Accordingly, the agreement is approved, subject to certain provisions being stricken as discussed herein.

**The Clerk of Court is respectfully directed to terminate the motion at ECF No. 185.**

**SO ORDERED.**

Dated: September 4, 2025
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge